POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Mark Loftus and*
*Patricia M. Loftus Trust uad 8/13/99 and*
*Proposed Lead Counsel for the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TRAMPE, Individually and on behalf of all others similarly situated, | Case No. 2:20-cv-11627-FMO-RAO |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF MARK LOFTUS AND PATRICIA M. LOFTUS TRUST UAD 8/13/99 FOR CONSOLIDATION, APPOINTMENT OF CO-LEAD PLAINTIFFS, AND APPROVAL OF COUNSEL |
| v. | |
| CD PROJEKT S.A., ADAM MICHAL KICINSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI, | |
| Defendants. | DATE:  April 8, 2021 TIME:  10:00 a.m. JUDGE:  Fernando M. Olguin CTRM:  6D |

| | | |
|---|---|---|
| 1 | RIVER HAIN, Individually and on behalf of all others similarly situated, | Case No. 2:21-cv-00354-CJC-JEM |
| 2 | | |
| 3 | Plaintiff, | |
| 4 | v. | |
| 5 | | |
| 6 | CD PROJEKT S.A., ADAM MICHAL KICINSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI, | |
| 7 | | |
| 8 | | |
| 9 | Defendants. | |

# **<u>TABLE OF CONTENTS</u>**

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   STATEMENT OF FACTS ............................................................................... 3

III.  ARGUMENT ................................................................................................... 6

     A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR
          ALL PURPOSES ................................................................................. 6

     B.   LOFTUS AND THE TRUST SHOULD BE APPOINTED CO-
          LEAD PLAINTIFFS ........................................................................... 7

          1.   Loftus and the Trust Are Willing to Serve as Class
              Representatives .................................................................... 8

          2.   Loftus and the Trust Have the "Largest Financial Interest" ............... 9

          3.   Loftus and the Trust Otherwise Satisfy the Requirements of Rule
              23 of the Federal Rules of Civil Procedure ...................................... 10

          4.   Loftus and the Trust Will Fairly and Adequately Represent the
              Interests of the Class and Are Not Subject to Unique Defenses ...... 13

     C.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD
          BE APPROVED ................................................................................ 14

IV.   CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF,
    2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014) ....................... 11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
    2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) ............................... 10

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...................................................................... 11

*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................... 11

*In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
    2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ........................... 11

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................. 9, 10

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................... 9, 10

*Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC,
    2013 U.S. Dist. LEXIS 93119 (N.D. Cal. July 2, 2013) ............................... 6

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
    2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ......................... 9, 10

*Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx),
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................. 14

*Richardson v. TVIA, Inc.*, No. C-06-06304 RMW,
    2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ......................... 6, 11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................... 12

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW,
    2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012) ............................. 6

### **Statutes**

15 U.S.C. 78u-4................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ......................................*passim*

### **Rules**

Fed. R. Civ. P. 23............................................................................*passim*

Fed. R. Civ. P. 42............................................................................ 1, 2, 6, 7

Movant Mark Loftus ("Loftus") and Patricia M. Loftus Trust uad 8/13/99 (the "Trust") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42 ("Rule 42"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Loftus and the Trust as Co-Lead Plaintiffs[1] on behalf of all persons or entities who purchased or otherwise acquired CD Projekt S.A. ("CD Projekt" or the "Company") securities between January 16, 2020 and December 17, 2020, inclusive (the "Class Period") (the "Class"); and (3) approving Loftus and the Trust's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.   PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that CD Projekt and certain of its officers defrauded investors in violation of the Exchange Act.  CD Projekt investors, including Loftus and the Trust, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of CD Projekt securities to fall sharply, damaging Loftus, the Trust, and other CD Projekt investors.

---

[1] The Trust is a revocable living trust funded from assets acquired during his marriage. *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A ¶ 3.  Loftus and his wife Patricia M. Loftus are the Trustees of the Trust.  *Id.*  As Trustees, each of them has authority to bind the Trust and enter into litigation on its behalf.  *Id.*

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the federal securities laws by the same group of defendants arising from the same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiffs the movant or group of movants that possess the largest financial interest in the outcome of the Related Actions and that satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with their transactions in CD Projekt securities during the Class Period, Loftus and the Trust incurred losses of approximately $61,206. *See* Pafiti Decl., Ex. B. Accordingly, Loftus believes that he and the Trust have the largest financial interest in the relief sought in the Related Actions.

Beyond the considerable financial interest of Loftus and the Trust, they also meet the applicable requirements of Rule 23 because Loftus and the Trust's claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs, and to vigorously prosecute the Related Actions on behalf of the Class, Loftus and the Trust have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities

litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Loftus and the Trust respectfully request that the Court enter an order consolidating the Related Actions, appointing Loftus and the Trust as Co-Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## II.   STATEMENT OF FACTS

As alleged in the Complaint in the first-filed of the Related Actions, for several years, CD Projekt had been devoting substantially all its resources to the development of Cyberpunk 2077, which the Company described as an "open world, narrative-driven role-playing game." *See Andrew Trampe v. CD Projekt S.A. et al.*, No. 2:20-cv-11627-FMO-RAO (C.D. Cal.), Dkt. No. 1, at ¶ 17.   The game was to be released on various platforms, including Sony's Playstation 5 and Microsoft's Xbox X and Xbox ("Next-Generation Consoles"), Microsoft's Xbox Series One and Sony's Playstation 4 (the "Current-Generation Consoles"), Windows, and Google's Stadia.   *Id.*   The original release date of the game was slated for April 17, 2020.   *Id.*

Throughout the Class Period, the above-captioned defendants ("Defendants") made materially false and misleading statements regarding the Company's business, operations, and compliance policies.   *See id.* ¶¶ 18-26.   Specifically, Defendants made

false and/or misleading statements and/or failed to disclose that: (1) Cyberpunk 2077 was virtually unplayable on the current-generation Xbox or Playstation systems due to an enormous number of bugs; (2) as a result, Sony would remove Cyberpunk 2077 from the Playstation store, and Sony, Microsoft, and the Company would be forced to offer full refunds for the game; (3) consequently, the Company would suffer reputational and pecuniary harm; and (4) as a result, Defendants' statements about their business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id.* ¶ 26.

The Company launched Cyberpunk 2077 on December 10, 2020. *Id.* ¶ 27. Consumers soon discovered that the Current-Generation Console versions of Cyberpunk 2077 were error-laden and difficult to play. *Id.* *IGN* published a scathing review, stating that the Console versions "fail[] to hit even the lowest bar of technical quality one should expect even when playing on lower-end hardware. [Cyberpunk 2077] performs so poorly that it makes combat, driving, and what is otherwise a master craft of storytelling legitimately difficult to look at." *Id.*

On December 14, 2020, facing criticisms for delivering an unplayable, bug-ridden product on the Consoles, the Company held a conference call. *Id.* ¶ 28. During the call, Defendant Adam Michal Kicinski called the Current-Generation Console versions "way below our expectations," and stated the following:

> After 3 delays, we as the Management Board were too focused on releasing the game. ***We underestimated the scale and complexity of the issues, we***

> ***ignored the signals about the need for additional time to refine the game on the base last-gen consoles.*** It was the wrong approach and against our business philosophy. On top of that, during the campaign, we showed the game mostly on PCs.

*Id.*

During that same call, Defendant Piotr Marcin Nielubowicz stated "we definitely did not spend enough time looking at that," when referring to issues with the Current-Generation Console versions. *Id.* ¶ 29.

Following the release, the Company's American Depository Receipts ("ADRs") fell from their close of $27.68 on December 9, 2020 to close at $20.75 on December 14, 2020, a drop of $6.93 or 25% over three trading days, damaging investors. *Id.* ¶ 30. Over that same period, CD Projekt's common share (OTGLF) price fell $21.65 per share, or 20.1%, to close at $86.00 on December 14, 2020, damaging investors. *Id.*

Then, on December 18, 2020, Sony issued a statement via the Playstation website that it would "offer a full refund for all gamers who have purchased Cyberpunk 2077 via PlayStation Store" and "be removing Cyberpunk 2077 from PlayStation Store until further notice." *Id.* ¶ 31. Microsoft also announced that it would offer refunds for the game. *Id.*

That same day, the Company stated that Sony's decision to "temporarily suspend" sales of the game came after a discussion with the Company. *Id.* ¶ 32.

On this news, CD Projekt's ADR (OTGLY) price fell approximately 15.8% to close at $18.50 per ADR on December 18, 2020, damaging investors. *See id.* ¶ 33. CD

Projekt's common share (OTGLF) price fell $9.20 per share, or 10.45%, to close at $78.80 on December 18, 2020, damaging investors.  *Id.*

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.  *See id.* ¶ 34.

## III.   ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication.  When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *6 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119, at *10 (N.D. Cal. July 2, 2013); *Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW, 2012 U.S. Dist. LEXIS 21590, at *9 (N.D. Cal. Feb. 21, 2012).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed."

15 U.S.C. 78u-4(a)(3)(A)(ii).  As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission, by the Defendants arising from the public dissemination of false and misleading information to investors.  Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

## B.    LOFTUS AND THE TRUST SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Loftus and the Trust should be appointed Co-Lead Plaintiffs because, to Loftus's knowledge, they have the largest financial interest in the Related Actions and Loftus and the Trust otherwise meet the requirements of Rule 23.   Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiffs in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in

response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Loftus and the Trust satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1.    Loftus and the Trust Are Willing to Serve as Class Representatives

On December 24, 2020, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors of CD Projekt securities that they had until February 22, 2021—*i.e.*, 60 days from the date of the Notice—to file a motion to be appointed as Lead Plaintiff.  *See* Pafiti Decl., Ex. C.

Loftus and the Trust have filed the instant motion pursuant to the Notice and have attached sworn Certifications executed by Loftus—on behalf of himself and the Trust,

respectively—attesting that they are willing to serve as Class representatives and to provide testimony at deposition and trial, if necessary.  *See* Pafiti Decl., Ex. D. Accordingly, Loftus and the Trust satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### 2.    Loftus and the Trust Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of Loftus's knowledge, he and the Trust have the largest financial interest of any CD Projekt investor seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered.  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at \*17-\*18 (N.D. Ill. Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013

U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at *10-*11 (N.D. Cal. Jan. 9, 2012) (same).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *18-*19.

During the Class Period, Loftus and the Trust (1) purchased 8,000 shares of CD Projekt ADRs; (2) expended $209,160 on their purchases of CD Projekt ADRs; (3) retained all of their shares of CD Projekt ADRs; and (4) as a result of the disclosures of the fraud, suffered a loss of $61,206 in connection with their purchases of CD Projekt securities.  *See* Pafiti Decl., Ex. B.  Because Loftus and the Trust possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Loftus and the Trust Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiffs must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that movants satisfy the requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *16 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Loftus and the Trust's claims are typical of those of the Class. Loftus and the Trust allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of

material facts concerning CD Projekt, or by omitting to state material facts necessary to make the statements they did make not misleading.  Loftus and the Trust, as did all Class members, purchased CD Projekt securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Loftus and the Trust are adequate representatives for the Class.  Here, Loftus has submitted signed Certifications on behalf of himself and the Trust declaring their commitment to protecting the interests of the Class.  *See* Pafiti Decl., Ex. D.  There is no antagonism between the interests of Loftus and the Trust and those of the Class, and the significant financial interest of Loftus and the Trust demonstrates that Loftus, both as an individual and as Trustee of the Trust, has a sufficient interest in the outcome of this litigation to vigorously prosecute fraud claims on behalf of the Class.   Moreover, Loftus

and the Trust have retained counsel that are highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submit their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Further demonstrating the adequacy of Loftus and the Trust, Loftus has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his relationship to the Trust, his authority to act on behalf of the Trust and bind the Trust into litigation, his decision to seek appointment of himself and the Trust as Co-Lead Plaintiffs, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. A.

### 4. Loftus and the Trust Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Loftus and the Trust as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiffs:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   [are] subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Loftus and the Trust to fairly and adequately represent the Class has been discussed above.  Loftus and the Trust are not aware of any unique

1    defenses Defendants could raise that would render them inadequate to represent the

2    Class.

3    **C.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE**

4    **APPROVED**

5    The PSLRA vests authority in Lead Plaintiffs to select and retain lead counsel,

6

7    subject to the approval of the Court.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v.*

8    *Guess?, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *15

9

10   (C.D. Cal. Apr. 26, 2001).   The Court should interfere with Lead Plaintiffs' selection

11   only when necessary to "protect the interests of the class."   15 U.S.C. § 78u-

12   4(a)(3)(B)(iii)(II)(aa).

13

14   Loftus and the Trust have selected Pomerantz as Lead Counsel for the Class.

15   Pomerantz is a premier firm, highly experienced in the areas of securities litigation and

16

17   class action lawsuits, which has successfully prosecuted numerous such actions on

18   behalf of investors over its 80+ year history, as detailed in its firm resume.   *See* Pafiti

19

20   Decl., Ex. E.  Pomerantz recently secured a recovery of $3 billion on behalf of investors

21   in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action

22   settlement in a decade and the largest settlement ever in a class action involving a

23

24   foreign issuer.  *See id.*  Petrobras is part of a long line of record-setting recoveries led by

25   Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc.*

26   *Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *Id*.  Most recently,

27

28

Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.*

As a result of their extensive experience in similar litigation, Loftus and the Trust's choice of counsel, Pomerantz, have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, Loftus and the Trust respectfully urge the Court to appoint Pomerantz to serve as Lead Counsel for the Class.

## IV.   CONCLUSION

For the foregoing reasons, Loftus and the Trust respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Loftus and the Trust as Co-Lead Plaintiffs for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  February 22, 2021

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Mark Loftus and Patricia M. Loftus Trust uad 8/13/99 and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Mark Loftus and*
*Patricia M. Loftus Trust uad 8/13/99*

CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*/s/ Jennifer Pafiti*
Jennifer Pafiti