COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
RYAN E. BLAIR (246724)
(rblair@cooley.com)
MATTHEW D. MARTINEZ (333932)
(mmartinez@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:  (858) 550-6000
Facsimile:   (858) 550-6420

JULIE M. VEROFF (310161)
(jveroff@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  (415) 693-2000
Facsimile:   (415) 693-2222

Attorneys for Defendants
CD Projekt S.A., Adam Michał Kiciński,
Marcin Iwiński, Piotr Marcin Nielubowicz,
and Michał Nowakowski

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TRAMPE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CD PROJEKT S.A., ADAM MICHAL KICIŃSKI, MARCIN IWIŃSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI,<br><br>Defendants. | Case No. CV 20-11627 FMO (RAOx)<br><br>CLASS ACTION<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Date:  December 2, 2021<br>Time:  10:00 a.m.<br>Courtroom:  6D<br>Judge:  Hon. Fernando M. Olguin<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  ARGUMENT ........................................................................................... 2

A.   This Court Does Not Have Personal Jurisdiction Over
     Defendants. ...................................................................................... 2

     1.   Defendants Are Not Subject to General Jurisdiction. ............... 3

     2.   Defendants Are Not Subject to Specific Jurisdiction. ............... 3

          a.   Plaintiffs Have Not Shown Purposeful Direction. ........... 4

          b.   Plaintiffs' Claims Do Not "Arise Out of" or "Relate
               to" Any Defendants' Contacts with the U.S. .................. 6

          c.   Exercising Personal Jurisdiction Over Defendants
               Would Be Unreasonable ................................................... 6

B.   Plaintiffs' Claims Are Impermissibly Extraterritorial And Do
     Not Satisfy Section 10(B)'s "In Connection" Requirement. ............... 9

C.   As To The Substance Of The CAC's Allegations, Plaintiffs Fail
     To Plead Falsity And Scienter With The Requisite Particularity. ....... 10

     1.   Plaintiffs Have Not Plausibly Alleged A False Or
          Actionable Statement. .............................................................. 11

     2.   Plaintiffs Have Not Established A Strong Inference Of
          Scienter. .................................................................................... 15

          a.   Plaintiffs' Fail to Plead a Plausible Motive ................... 16

          b.   Plaintiffs' Media Reports Are Not Sufficiently
               Reliable to Serve as a Basis for a Finding of
               Scienter. ........................................................................ 17

          c.   Defendants' Post-Release Statements Do Not
               Demonstrate Scienter. ................................................... 18

          d.   Plaintiffs' Allegations of 'Obvious Defects' Are
               Insufficient to Establish Scienter. .................................. 20

III. CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
   189 F.3d 1017 (9th Cir. 1999) .......................................................................... 10

*In re Apple Inc. Sec. Litig.*,
   2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .............................................. 18, 19

*In re Boeing Sec. Litig.*,
   40 F. Supp. 2d 1160 (W.D. Wash. 1998) ........................................................ 15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) ...................................................................................... 4

*Church v. Glencore PLC*,
   2020 WL 4382280 (D.N.J. July 31, 2020) ...................................................... 10

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ............................................................................. 9

*Corwin v. Swanson*,
   2010 WL 11598013 (C.D. Cal. Apr. 27, 2010) ................................................. 5

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ......................................................................... 15

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................................... 3

*Dean v. China Agritech, Inc.*,
   2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) ................................................ 18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1107 (2021) ........................................................................... 4, 5, 6, 7

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ............................................................................. 8

*Gammel v. Hewlett-Packard Co.*,
   905 F. Supp. 2d 1052 (C.D. Cal. 2012) .......................................................... 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma,*
*S.A.,*
    972 F.3d 1101 (9th Cir. 2020) ............................................................... 3

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002) ............................................................... 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) ............................................................................ 6

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (9th Cir. 2000) ............................................................. 19

*Inchen Huang v. Higgins,*
    443 F. Supp. 3d 1031 (N.D. Cal. 2020) ................................................ 16

*In re Infonet Servs. Corp. Sec. Litig.,*
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) ................................................ 15

*Kelly v. Elec. Arts, Inc.,*
    71 F. Supp. 3d 1061 (N.D. Cal. 2014) ............................................. 12, 13

*In re Levi Strauss & Co. Sec. Litig.,*
    527 F. Supp. 2d 965 (N.D. Cal. 2007) .................................................. 12

*Loos v. Immersion Corp.,*
    762 F.3d 880 (9th Cir. 2014) ............................................................... 16

*Lopez v. Ctpartners Exec. Search Inc.,*
    173 F. Supp. 3d 12 (S.D.N.Y. 2016) .................................................... 14

*In re McKesson HBOC, Inc. Sec. Litig.,*
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................... 18

*MGA Entm't, Inc. v. Cabo Concepts Ltd.,*
    2021 WL 4733784 (C.D. Cal. June 7, 2021) .......................................... 4

*Moser v. Benefytt, Inc.,*
    8 F.4th 872 (9th Cir. 2021) .................................................................. 4

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-iii-

**REPLY MP&A ISO MOTION TO DISMISS CAC**
**CASE NO. CV 20-11627 FMO (RAOx)**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re New Century,*
  588 F. Supp. 2d 1206 (C.D. Cal. 2008)................................................................. 19

*Nguyen v. Endologix, Inc.,*
  962 F.3d 405 (9th Cir. 2020) ................................................................................ 17

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.,*
  774 F.3d 598 (9th Cir. 2014) ................................................................................ 13

*Ranza v. Nike, Inc.,*
  793 F.3d 1059 (9th Cir. 2015) ................................................................................ 3

*Reese v. Malone,*
  747 F.3d 557 (9th Cir. 2014) ................................................................................ 19

*S.E.C. v. Abellan,*
  674 F. Supp. 2d 1213 (W.D. Wash. 2009) ........................................................... 10

*Schwarzenegger v. Fred Martin Motor Co,*
  374 F.3d 797 (9th Cir. 2004) .......................................................................... 4, 5, 6

*Stoyas v. Toshiba Corp.,*
  424 F. Supp. 3d 821 (C.D. Cal. 2020) ................................................................. 10

*Stoyas v. Toshiba Corp.,*
  896 F.3d 933 (9th Cir. 2018) ...................................................................... 2, 9, 10

*In re Stratasys Ltd. S'holder Sec. Litig.,*
  864 F.3d 879 (8th Cir. 2017) ................................................................................ 20

*In re Take-Two Interactive Sec. Litig.,*
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) .................................................................. 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007) .............................................................................................. 16

*Tuazon v. R.J. Reynolds Tobacco Co.,*
  433 F.3d 1163 (9th Cir. 2006) .............................................................................. 11

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
2017 WL 2378369 (C.D. Cal. May 31, 2017)...................................... 7, 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
Litig.*,
2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ............................................ 8

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................................. 3

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007)............................................... 18

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017).............................................................. 3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)................................................................ 18

**Statutes**

Securities Exchange Act of 1934
§ 10(b)................................................................................................ 9, 10

**Other Authorities**

*Keanu Reeves among 2021 inductees to Canada's Walk of Fame*,
CBC News, Oct. 7, 2021, 10:43AM ET,
https://www.cbc.ca/news/entertainment/2021-canada-walk-of-
fame-1.6203036 (last visited Nov. 17, 2021)...................................... 6

Target Corporation, https://www.target.com/p/cyberpunk-2077-xbox-
one-xbox-series-x-s-digital/-/A-81796289 (last visited Nov. 17,
2021) .................................................................................................... 7

## I.    INTRODUCTION

Plaintiffs claim that CD Projekt and certain of its executives were eager to book revenue for its new video game, Cyberpunk 2077, and, after having delayed the release of the game several times during 2020, decided to "reap the financial rewards" by releasing it anyway despite purportedly knowing the game was unplayable.  (Opp. 1–2.)[1]  Stripping Plaintiffs' claim of its reliance on impermissible fraud-by-hindsight, misstatements of law, and convenient half-truths, their story falls apart.

In reality, the CAC's own allegations and facts subject to judicial notice tell a far different (and non-culpable) story.  Poland-based CD Projekt and its employees poured considerable resources and years of their lives into developing a highly complex game, and did so in the face of a global pandemic.  The Company repeatedly delayed the release of Cyberpunk to optimize its functionality and minimize the kinds of bugs and glitches that accompany the release of *any* new video game.  At the same time, the Company expressly warned investors that Cyberpunk would not be "bug-free" at release, though it believed that any bugs present at the game's release would "not stand out from the perspective of gamers."  Plaintiffs do not dispute that Cyberpunk performed well on newer machines, but the game's complexity taxed the capacity of two older-gen consoles.  After Cyberpunk's release, Company executives acknowledged that, in hindsight, they could have done better in addressing older-gen performance issues, but clearly did not admit to anything amounting to "kn[owing] it all along."  In the end, the far more cogent and compelling inference is that Defendants genuinely believed they were releasing Cyberpunk in an acceptable state to *all* gamers, but fell short of their expectations as to the older-gen consoles.

Dismissal remains warranted for three reasons.  *First*, CD Projekt is a *Polish*

---

[1] All capitalized terms have the same meaning as specified in Defendants' Motion to Dismiss (ECF No. 47-1 ("Mot.")).  All "¶__" citations are to the CAC (ECF No. 41).  All "Ex. __" citations are to the Declaration of Julie Veroff (ECF No. 47-2).  All "Opp.__" citations are to ECF No. 51.  All emphasis is added, and all citations and quotations are omitted, unless otherwise noted.

company with **Polish** executives. Plaintiffs' sole argument for jurisdiction seems to be that CD Projekt sells **video games** in the U.S., but that does not subject a foreign company, the shares of which trade exclusively on a non-U.S. exchange, to jurisdiction in a **securities fraud** case. Plaintiffs' jurisdictional arguments contradict Supreme Court precedent, and the Court should reject Plaintiffs' attempt to sidestep the Ninth Circuit test set forth in *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018).

**Second**, none of the statements challenged in the CAC are actionable. Plaintiffs claim that Defendants' optimistic **pre-release** statements were false simply because of Cyberpunk's **post-release** gameplay on older-gen consoles. But Plaintiffs do not plead facts showing that any Defendant knew any **pre-release** statement they made about Cyberpunk was false **at the time it was made**. Nor do Plaintiffs plead that the bugs or glitches in Cyberpunk made it incomplete or unplayable on older-gen consoles. Indeed, Plaintiffs concede that, when the challenged statements were made, Cyberpunk was substantively complete, but more time was needed to optimize gameplay and implement final touches. In any event, all of the challenged statements are non-actionable for the separate reasons that they are puffery, opinions, protected forward-looking statements, or some combination thereof.

**And third**, Plaintiffs still fail to establish scienter. None of Defendants' after-the-fact statements demonstrate intent to commit securities fraud, nor do they constitute an admission to having done so. Most importantly, Plaintiffs do not sufficiently explain why Defendants would have released a game they knew was not ready despite the grave reputational and financial damage that would certainly result. Plaintiffs posit no financial motive to do so or, indeed, any motive whatsoever.

## II.   ARGUMENT

### A.   This Court Does Not Have Personal Jurisdiction Over Defendants.

Plaintiffs bear "the burden of demonstrating that personal jurisdiction is proper." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,

972 F.3d 1101, 1106 (9th Cir. 2020).  Plaintiffs have not met this burden.

### 1.    Defendants Are Not Subject to General Jurisdiction.

The Court should reject Plaintiffs' assertions about general jurisdiction out-of-hand.  This is not the exceptional case whereby a foreign defendant's connection to the U.S. is "so continuous and systematic" that general jurisdiction should extend beyond its place of incorporation and principal place of business—here, Poland.  *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014).  While a large portion of CD Projekt's game sales may be in North America (*see* Opp. 16), the Supreme Court expressly rejected "sizable" sales as a basis for general jurisdiction, noting that such an exercise of "all-purpose jurisdiction" would be "exorbitant" and "unacceptably grasping."  *Daimler AG*, 571 U.S. at 138-39.[2]  Nor is it sufficient that Defendants attended a handful of meetings and an international gaming convention in the U.S. (Opp. 16.)  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069–70 (9th Cir. 2015) (company incorporated and headquartered abroad was not "at home" in Oregon despite having 30 employees there, with others attending business meetings there 50 times per month for five years).

### 2.    Defendants Are Not Subject to Specific Jurisdiction.

Plaintiffs also cannot satisfy the Supreme Court's requirement that there be a "substantial connection" between the forum and the foreign defendant's "suit-related conduct" to establish specific jurisdiction.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014); (*see* Mot. 12–13).  Plaintiffs focus only on some non-suit-related activities—*e.g.*, acknowledging Thanksgiving; attending non-deal roadshows and an international gaming conference; and operating a U.S. sales office that was not involved with the alleged misstatements.  But the Supreme Court has "long treated isolated or sporadic transactions differently from continuous ones."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1107, 1028 n.4 (2021).

---

[2] *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021-22 & n.1 (9th Cir. 2017), ***rejected*** a finding of general jurisdiction for precisely this reason.

Moreover, Plaintiffs fail to plead any facts establishing a substantial connection between those activities and the ***U.S.-based securities at issue here***.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("general connections with the forum are not enough"); *MGA Entm't, Inc. v. Cabo Concepts Ltd.*, 2021 WL 4733784 (C.D. Cal. June 7, 2021) (Olguin, J.) (holding there was no specific jurisdiction where the defendant's activities in the forum were unconnected to the plaintiff's claims).  Throughout their brief, Plaintiffs fail to appreciate the important distinction between U.S.-based investors that indirectly invested in CD Projekt through ***U.S.-based securities*** (*i.e.*, unsponsored ADRs and F shares) and U.S.-based investors that directly invested in CD Projekt through securities traded on the Warsaw Stock Exchange.  Because this latter group did not trade in U.S. capital markets, they could not have been affected by any harm alleged to have been "suffered in the forum state."  *Schwarzenegger v. Fred Martin Motor Co*, 374 F.3d 797, 803 (9th Cir. 2004).  It is thus not enough for Plaintiffs to allege a connection to U.S.-based investors generally (and many of their allegations fail even to do that, as they do not distinguish between U.S.-based and non-U.S. based investors); they must show that Defendants directed their activities at investors ***like Plaintiffs***, *i.e.*, U.S.-based investors in unsponsored ADRs and F shares.  *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 877–78 (9th Cir. 2021) ("[W]hen determining whether there is personal jurisdiction over the defendant with respect to claims asserted by the named plaintiffs in a putative class action, the only claims to be assessed by the court are those of the class representatives.") (emphasis omitted).  Plaintiffs have not done so, and their claims thus necessarily fail.

### a.    Plaintiffs Have Not Shown Purposeful Direction.

Plaintiffs do not dispute (and therefore have waived) that Defendants have not purposefully availed themselves of this forum. (Mot. 13–16.)  Instead, Plaintiffs only attempt to show purposeful direction, but fall well short of establishing that Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state,

(3) causing harm that [Defendants knew was] likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803.  (Opp. 11.)

First, Plaintiffs argue purposeful direction toward the U.S. because Defendants once rescheduled by a few days their quarterly earnings statement and an associated earnings call so that those events would not fall on American Thanksgiving, and because Mr. Nielubowicz ended the earnings call by wishing "a very good Thanksgiving to all our American friends."  (Opp. 12.)  Critically, Plaintiffs do not argue these actions targeted investors in *U.S.-based securities*.  In any event, slight scheduling adjustments and the courtesy of a holiday wish are hardly sufficient to show "reciprocity between a defendant and a State."  *Ford Motor Co.*, 141 S. Ct. at 1024-25; *Corwin v. Swanson*, 2010 WL 11598013, at *3 (C.D. Cal. Apr. 27, 2010) ("Statements directed at the general investing public . . . do not normally constitute conduct that is 'expressly aimed' at a particular forum.").

Second, Plaintiffs note that CD Projekt executives attended a handful of events in the U.S.—namely, investor meetings at the 2019 E3 Conference in Los Angeles, some "roadshow" events in U.S. cities in summer and fall 2019, and a virtual Global Emerging Markets Conference hosted by Citibank in September 2020.  (*See* Opp. 12–13.)  But again, Plaintiffs have offered nothing to show that investors like them even attended those events, let alone that Defendants targeted those U.S.-based investors invested in U.S.-based securities.  In fact, their allegations and evidence *undermine* any such inference.  Plaintiffs' own CAC acknowledges that E3 is the largest annual *international* trade event for the video game industry; it is not an event specific to Americans.  (¶ 28.)  And the exhibits they append to their Opposition show that the various "roadshows" CD Projekt attended were "non deal" roadshows.  (Opp. 12–13 (citing Exs. 3–4).)  As for the Citibank conference,[3] Plaintiffs do not provide any evidence of its substance or of CD Projekt's involvement, let alone that the

---

[3] Plaintiffs insinuate a connection by noting that "Citi is also a sponsor of CD Projekt's ADRs" (Opp. 13), but ignore that Citi's ADR program is *unsponsored* because Defendants *did not consent* to its creation.  (ECF No. 47-4 ¶ 9.)

conference had anything to do with investors in U.S.-based securities.[4]

                     **b.**       **Plaintiffs' Claims Do Not "Arise Out of" or "Relate to" Any Defendants' Contacts with the U.S.**

Plaintiffs contend, without citation, that if the Court agrees they have shown purposeful direction, then they necessarily also have shown that their claims "arise[] out of or relate[] to . . . [D]efendants' forum-related activities." *Schwarzenegger*, 374 F.3d at 802.[5] (*See* Opp. 12–13.)  But that approach would improperly collapse the first and second prongs of the specific jurisdiction test.  The second prong "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co.*, 141 S. Ct. at 1026.  Here, Plaintiffs have not established "an affiliation between the [U.S.] and the underlying controversy"—*i.e.*, the claimed impact of Defendants' allegedly false and misleading statements on the price of Plaintiffs' unsponsored ADRs and F shares.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Plaintiffs do not dispute that Defendants did not create or consent to the creation of the securities held by Plaintiffs.  (Mot. 4–6, 14–16.)  Defendants are thus fundamentally disconnected from the securities at issue in this case, so Plaintiffs' claims cannot be said to have arisen out of Defendants' contacts with the U.S.  (*Id.* at 16–17.)

                     **c.**       **Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable.**

Plaintiffs have not disturbed Defendants' showing that subjecting them to jurisdiction in this case would be unfair and unreasonable.

---

[4] The tenuous nature of Plaintiffs' jurisdictional argument is best evidenced by their reliance on the fact that CD Projekt hired Keanu Reeves to voice a character in Cyberpunk. (*See* Opp. 16.)  Mr. Reeves, however, is **Canadian**.  *See, e.g.*, *Keanu Reeves among 2021 inductees to Canada's Walk of Fame*, CBC News, Oct. 7, 2021, 10:43AM ET, https://www.cbc.ca/news/entertainment/2021-canada-walk-of-fame-1.6203036 (last visited Nov. 17, 2021).

[5] The "but for" test Plaintiffs recite in their brief (*see* Opp. 13) is no longer required following the Supreme Court's recent decision in *Ford Motor Company*.  *See* 141 S. Ct. at 1026 (rejecting a "causation-only approach").

On the first reasonableness factor—"the extent of the defendant's purposeful interjection into the forum state's affairs," *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at *9 (C.D. Cal. May 31, 2017)—Plaintiffs ignore that CD Projekt is incorporated and headquartered in Poland, the Individual Defendants live and work in Poland, all the challenged statements were made in Poland, Defendants ***chose*** to sell CD Projekt securities ***only*** in Poland, and CD Projekt's trading presence in the U.S. was established by ***third parties without the Company's consent***.[6]   (Mot. 17–18.)   All Plaintiffs offer in response is "Happy Thanksgiving," Defendants' participation in a handful of U.S. meetings, the Company's sales of video games to U.S. consumers, and a single U.S.-based sales office in California.   (Opp. 14.)   As explained, Plaintiffs' Thanksgiving, E3, and roadshow arguments fail to show any purposeful engagement with the U.S. securities market.   (*See supra* at 5.)   As to product sales and CD Projekt's California-based sales office, which had no role in the statements or securities at issue here (*see* ECF No. 47-4 (Def. Decl.) ¶¶ 20-23), they are not relevant to the specific jurisdiction inquiry because this is not a products liability case—CD Projekt's videogames did not cause the alleged injury here.   *See, e.g.*, *Ford Motor Co.*, 141 S. Ct. at 1027 (finding specific jurisdiction where "the product malfunctions" caused the injury in a market where the product was sold).[7]   The controversy here involves alleged misstatements and their supposed impact on the price of unsponsored ADRs and F shares.   As to ***that*** controversy, Defendants have had no "purposeful interjection into

---

[6] Defendants incorporate from their opening brief their arguments as to the other factors not discussed here. (*See* Mot. 17–20.)

[7] Even were this Court to consider CD Projekt's videogame sales as part of its specific jurisdiction analysis, many of those sales are accomplished via purely online transactions; no physical hardware changed hands. *See, e.g.*, Target Corporation, https://www.target.com/p/cyberpunk-2077-xbox-one-xbox-series-x-s-digital/-/A-81796289 (last visited Nov. 17, 2021) (link to purchase digital version of Cyberpunk). The Supreme Court repeatedly has questioned the propriety of applying the current special-jurisdiction framework to "internet transactions, which may raise doctrinal questions of their own." *Ford Motor Co.*, 141 S. Ct. at 1028 n.4.

the forum state's affairs." *Vancouver*, 2017 WL 2378369, at *9.[8]

As to the third reasonableness factor—"the extent of conflict with the sovereignty of the defendant's state," *id*.—Plaintiffs claim that courts "routinely find no conflict [with] a foreign country's sovereignty in litigating securities fraud actions in the United States" (Opp. 14).  But the two cases they cite found no sovereignty conflict because those cases involved ***sponsored*** ADRs.  *See Vancouver*, 2017 WL 2378369, at *10 (in *Vancouver* and *In re Volkswagen*, there was "no conflict with the sovereignty of Germany" because the defendants had "sponsored [their] ADRs in the U.S. through a deposit agreement with a U.S.-based bank" and the securities claims thus were "based on conduct that is sufficiently tied to the [U.S.]") (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 66281, at *23 (N.D. Cal. Jan. 4, 2017)).  Here, of course, the ADRs at issue are ***unsponsored***.  (Mot. 18-19.)

On the fifth factor—where the controversy will be most efficiently resolved, *Vancouver*, 2017 WL 2378369, at *9—Plaintiffs acknowledge that "a considerable quantity of evidence is located in Poland" (Opp. 15), and ignore that any discovery requests may be subject to the Hague Convention's difficult and expensive process. (Mot. 19.)

Finally, as to the seventh factor, Poland is a suitable alternative forum. According to a leading Polish academic on Polish securities law, shareholders can seek damages against public companies in Polish court for losses suffered because of misstatements or omissions, including through class actions.  (*See* Mot. at 19–20.)

---

[8] *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018), is inapposite.  *Freestream* concerned defamation "committed within the forum state." *Id.* at 606.  The Ninth Circuit found that defendants had "interject[ed] themselves into . . . Nevada's affairs" because the attorney who made the defamatory remark "intentionally traveled to Nevada to participate in the 2015 convention" where he made the statement at issue and the company he was representing at the convention "regularly solicit[ed] business in Nevada for its law practice, including through participation in industry meetings and conventions there."  *Id.* at 607.  Here, by contrast, the alleged misstatements were made ***outside*** the U.S., and Defendants never even consented to participating in U.S. capital markets.

Plaintiffs demand that Defendants point to a securities class action in Poland with facts similar to this one, but it is **Plaintiffs** who "bear[] the burden of proving the unavailability of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993). Plaintiffs have made no effort to do so.

### B. Plaintiffs' Claims Are Impermissibly Extraterritorial And Do Not Satisfy Section 10(B)'s "In Connection" Requirement.

Shockingly, Plaintiffs do not even attempt to satisfy the three factors the Ninth Circuit uses to assess whether the alleged fraud was "in connection with" their purchase of the unsponsored ADRs and/or F shares at issue. *See Toshiba*, 896 F.3d at 951. Instead, without citation or explanation, they simply suggest that they need not do so.[9]

The Ninth Circuit could not have been more clear: "sufficiently pleading [a defendant's] connection to the ADR transactions **requires** clearly setting forth the transactions." *Id.* (emphasis added). Plaintiffs have not done so—"the FAC omits basic details about ADRs" generally and about the unsponsored ADRs here specifically. *Id.*; (*see* Mot. 23). Plaintiffs shirk their obligation by asserting that they have done more than the *Toshiba* plaintiffs because they identify "the depositaries and where they are located, where investors could tender their ADRs in exchange for common stock, and where the ADRs are traded." (Opp. 19 (citing ¶ 11).) But Plaintiffs get no points for a partial effort. *Toshiba* is clear that Section 10(b)'s "in connection with" requirement "requires" more.[10]

Plaintiffs also disclaim the need to show the second factor—Defendants'

---

[9] Plaintiffs misrepresent the nature of F shares and suggest that Defendants had some involvement with or control over them. (*See* Opp. 19.) That is wrong. F shares are foreign securities with U.S. ticker symbols and are created by broker-dealers to facilitate purchases by U.S. investors. (*See* Mot. 5.) As with the unsponsored ADRs, Defendants had no role in creating the F shares at issue here. (*Id.*)

[10] *E.g.*, factual allegations regarding the over-the-counter market on which the ADRs are listed, whether the ADRs are sponsored, the Form F-6s the depositary banks used to register the ADRs, the trading volume of the ADRs, and the ADRs' contractual terms, along with relevant variants between depositary banks. *Toshiba*, 896 F.3d at 951. Plaintiffs plead none of this information.

"involve[ment] in the establishment of the ADRs." *Toshiba*, 896 F.3d at 951; (*see* Opp. 19). But the Ninth Circuit explained that "for fraud to be 'in connection with the purchase or sale of any security,' it must 'touch' the sale." *Toshiba*, 896 F.3d at 951. There be must "some causal connection between the fraud and ***the securities transaction in question***." *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999). Plaintiffs again fall back on "Happy Thanksgiving," claiming this shows Defendants' intent to influence U.S. investors while speaking to a global audience. (*See* Opp. 12.) It does not, and in any event, the Ninth Circuit requires a connection not just to the forum but to the securities at issue—*i.e.*, the unsponsored ADRs and F shares. Plaintiffs admittedly have not attempted to show this.[11]

Finally, Plaintiffs do not even acknowledge *Toshiba*'s third factor—whether any of the depositary banks that issued the ADRs are significant shareholders of the Company. 896 F.3d at 952. They are not. (*See* Mot. 23; ECF No. 47-4 ¶¶ 13–14.)

Because Plaintiffs have failed to sufficiently allege Defendants' "plausible participation in the establishment of the ADR program," they have not satisfied Section 10(b)'s "in connection with" requirement. *Stoyas v. Toshiba Corp.*, 424 F. Supp. 3d 821, 828 (C.D. Cal. 2020).[12]

## C. As To The Substance Of The CAC's Allegations, Plaintiffs Fail To Plead Falsity And Scienter With The Requisite Particularity.

Given the fatal jurisdictional issues identified above, the Court need not reach the substantive allegations in the CAC. Should the Court do so, however, it will find

---

[11] Plaintiffs' single case about stock promoters being liable under the Exchange Act predates *Toshiba* and contains no analysis of Section 10(b)'s "in connection with" requirement. (*See* Opp. 20 (citing *S.E.C. v. Abellan*, 674 F. Supp. 2d 1213, 1219 (W.D. Wash. 2009)).)

[12] Alternatively, this action should be dismissed on forum non conveniens grounds. (Mot. 24–25.) Plaintiffs ignore *Church v. Glencore PLC*, 2020 WL 4382280 (D.N.J. July 31, 2020), which dismissed on forum non conveniens grounds a securities fraud action against a foreign company whose unsponsored ADRs traded on a New York-based OTC market. And because Plaintiffs can bring their claims in Poland and obtain a remedy if they prevail, the "easy" alternate forum test is satisfied. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).

that Plaintiffs still fail to plead that any challenged statement was false when made or allege a strong inference of scienter.

### 1. Plaintiffs Have Not Plausibly Alleged A False Or Actionable Statement.

*First,* Plaintiffs fail to plead that any statements challenged in the CAC were false or misleading.  Plaintiffs allege that *pre-release* statements about Cyberpunk being "complete" and "playable" were false because, after its release several months later, gameplay on the older-gen consoles was buggier than anticipated.  (*E.g.*, ¶¶ 39, 41–42).  But in context, "complete" and "playable" does *not* mean perfect and bug-free.   Indeed, those words cannot have meant that because the Company simultaneously stated that it was *delaying* Cyberpunk's release because it "need[ed] more time to finish playtesting, fixing and polishing" (Ex. N 49; Ex. S 63.)  In context, complete and playable simply meant that "[t]he quests, the cutscenes, the skills and items; all the adventures [the game] has to offer" were in place.  (Ex. P 54; Ex. Q 56.)  Plaintiffs concede that was true when the statements were made.[13]  (*See* Opp. 25.)

Also, Plaintiffs' theory of falsity is impermissible fraud-by-hindsight.  Put simply, Mr. Nowakowski's *post-release* statement that CD Projekt's final optimization efforts "did not come together exactly as we had planned" does not show that that the *pre-release* "complete" and "playable" statements were false when made.   (Opp. 27.)   Similarly, Plaintiffs say a Bloomberg.com article shows foreknowledge of serious bugs because, *after Cyberpunk's release*, an unnamed Company employee "asked the board why it had said in January that the game was 'complete and playable' when it wasn't true, to which the board answered that it would take responsibility."  (*Id*. at 26.)  Setting aside the unreliability of these baseless, anonymous, and unverified allegations (discussed *infra* Section II.C.2.b.),

---

[13] Any attempt by Plaintiffs to argue that putting their cherry-picked phrases in context somehow creates a "fact dispute" should not be countenanced.

a post-release opinion from an alleged CD Projekt employee cannot suggest pre-release falsity. *See In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 987 (N.D. Cal. 2007) (rejecting theory of falsity based on employee disagreements with the company's positions). That "the board" allegedly said "it would take responsibility" does not mean the Defendants agreed with the questioner's stated opinion. Rather, Defendants took responsibility by acknowledging that gameplay on the two older-gen consoles was below their expectations, committing to fix the glitches in subsequent patches, and issuing full refunds to anyone who wanted them. (*See* ¶¶ 50, 53, 57.) None of that makes Defendants' statements false when made.[14]

**Second,** the vague and optimistic statements challenged in the CAC are not actionable as a matter of law. Defendants cite about a dozen cases that have rejected the same language challenged here. (Mot. 28 n.14.) One of them, *Kelly v. Electronic Arts, Inc.*, involves almost identical facts—a highly anticipated video game that was allegedly "unplayable" due to glitches—and similarly optimistic statements (the game was "ready to launch . . . on the next-generation gaming consoles"). 71 F. Supp. 3d 1061, 1070 (N.D. Cal. 2014). Tellingly, Plaintiffs fail to cite a ***single*** case finding similar language actionable.[15]

---

[14] Plaintiffs also argue that Defendants' ***pre-release*** statements that Cyberpunk was complete and playable were rendered false by Sony and Microsoft's ***post-release*** reaction to Cyberpunk. (Opp. 27.) However, they fail to allege that either company considered the game incomplete or unplayable. Quite the opposite, Sony and Microsoft certified Cyberpunk before it was released. (Ex. R 60.) And Microsoft's post-release warning label suggests the game could be played, just with "performance issues." (¶ 57.) Plaintiffs argue that the Court should not take judicial notice of Exhibit R (Opp. 26.) But Plaintiffs filed no opposition to Defendants' Request for Judicial Notice (ECF No. 48). In any event, Exhibit R clearly is a judicially noticeable document—it is a publicly available financial statement cited in the CAC. (¶ 44.) Ironically, to rebut this plainly verifiable document, Plaintiffs cite an obscure website (screenrant.com) that is outside the pleadings and not judicially noticeable. (Opp. 26.)

[15] Plaintiffs argue that the remarkably similar facts in *Kelly* are distinguishable because EA was developing "26 games," whereas CD Projekt was only developing one. (Opp. 28–29.) This is a distinction without a difference—only one game, Battlefront 4, was at issue in *Kelly*. Plaintiffs also contend that the puffing statements here are more specific than those in *Kelly*. (*Id.*) But *Kelly* rejected almost identical

1    Instead, Plaintiffs claim that, when viewed in context, the pre-release

2  complete-and-playable statements were not vague because they assured investors that

3  the delay "did not mean that they were having any difficulties creating a playable

4  game." (Opp. 28.) Plaintiffs again ignore that these statements were made

5  concurrently with announcements delaying Cyberpunk's release because the

6  Company needed more time to fix glitches. (Ex. N 49; Ex. S 63.) No reasonable

7  investor could have walked away from those announcements thinking that CD

8  Projekt did not have "any difficulties" with the game.

9    Plaintiffs also say Mr. Nowakowski's statement that "there is no problem with

10 Xbox or PlayStation" was not puffery because he was responding to rumors that there

11 were issues with gameplay on the older-gen consoles. (Opp. 28.) This so-called

12 context does not in any way make his statement any less vague. And right before

13 Mr. Nowakowski's statement, he acknowledged "there is optimization to be

14 handled," or in other words, bugs to fix in the older-gen consoles. (¶ 43.)

15    Plaintiffs further argue that Mr. Kiciński's statement that "the game performs

16 great on every platform" was not puffery because it was in response to an analyst's

17 question about gameplay on the older-gen systems. (Opp. 28.) Again, that this vague

18 statement was in response to an analyst's question does not make "performs great"

19 any less vague. And Plaintiffs omit the first part of the sentence—"we believe"—

20 which makes the sentence even less concrete. *Or. Pub. Emps. Ret. Fund v. Apollo

21 Grp. Inc.*, 774 F.3d 598, 606–07 (9th Cir. 2014) (subjective statements preceded by

22 qualifiers, such as "we believe," were puffery). *See also In re Take-Two Interactive

23 Sec. Litig.*, 551 F. Supp. 2d 247, 265 (S.D.N.Y. 2008) (a statement that "we believe"

24 a video game complied with rating requirements was inactionable because the

25 plaintiffs "failed to aver adequately that the defendants were disingenuous [in their

26 belief]").

27 ─────────────

28 puffing statements, including that EA was "ready to launch [Battlefront 4] on next-
generation gaming consoles." 71 F. Supp. 3d at 1070.

***Third,*** the statements that Plaintiffs concede are opinions are not actionable. (Opp. 29; *see* Mot. 30.)  Plaintiffs argue that just one of the opinion statements is actionable under *Omnicare*[16]: before Cyberpunk's release, Mr. Kiciński said, "we believe that the game performs great on every platform." (Opp. 29–30; *see* ¶ 45; Ex. V 72.)  Plaintiffs contend that Defendants could not have believed Mr. Kiciński's ***pre-release*** statement because, ***after Cyberpunk's release***, Mr. Iwiński said the Company did not provide reviewers with the older-gen version because it was fixing bugs until the "last minute." (Opp. 35; *see* ¶3.)  This is just more fraud-by-hindsight. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 24 (S.D.N.Y. 2016) (holding that under *Omnicare,* it "is not sufficient . . . to allege that an opinion was not borne out by subsequent events").  Plaintiffs also omit that Mr. Iwiński said that Defendants "***thought we'd make it in time.***" (¶ 65.)  In any event, the post-release discovery of bugs in the game when played on older-gen consoles does not undermine Mr. Kiciński's belief in the truth of his statements at the time he made them.  In fact, during the same investor call, Mr. Kiciński said the older-gen consoles were "[o]f course" performing "a bit lower than on [next gen] consoles," and told investors that "[s]uch a big game can't be entirely bug-free." (Ex. V 73–74.)

***And fourth,*** the challenged forward-looking statements are not actionable. Plaintiffs first argue that the PSLRA safe harbor does not apply because CD Projekt did not register its securities with the SEC. (Opp. 30–31.)  Even if that is true, the PSLRA was merely the codification of the common law "bespeaks caution" doctrine, which the PLSRA did not disturb.  *See In re Boeing Sec. Litig.*, 40 F. Supp. 2d 1160, 1170 (W.D. Wash. 1998).

Plaintiffs also argue that the statements do not qualify for the safe harbor

---

[16] Plaintiffs fail to address (and therefore have waived) Defendants' argument that the other challenged opinion statements— ("[W]e believe that the level [of bugs] will be as low as to let gamers not see them. . . . I would say general features and many of [the bugs] are already fixed" (¶ 46; *see* Mot. 30–31)—are not actionable under *Omnicare.* (*See* Opp. 29 (arguing only as to the "first opinion statement").)

because they were not identified as forward-looking. (Opp. 31.) Not so. The statements were identified as such. (*See, e.g.*, Ex. Y 85 ("This report includes forward-looking statements."); Ex. Z 88 (same)); *see Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1066 (C.D. Cal. 2012) (rejecting argument that statements "were not identified as forward-looking" where "Defendants advised . . . that Defendants' statements might include 'forward looking information'").

Citing no authority, Plaintiffs next argue that some of the cautionary language should not count because it did not appear in the same document as some of the challenged forward-looking statements. (Opp. 31.) Courts repeatedly have rejected Plaintiffs' strict view of what it means for cautionary language to "accompany" statements. *See, e.g.*, *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1092–93 (C.D. Cal. 2003) (applying bespeaks caution doctrine when cautionary language was in offering documents and alleged misstatements were made in "in less formal" presentations and press releases). Plaintiffs do not (and cannot) challenge the adequacy of the cautionary language—it warned of precisely what Plaintiffs allege occurred here. (*See, e.g.*, Ex. J 36. (warning investors of "incorrect estimation of the required workload," and "failure to meet quality assurance criteria or technical glitches").)[17]

## 2. Plaintiffs Have Not Established A Strong Inference Of Scienter.

Plaintiffs' separate, equally fatal problem is that they have not pleaded a credible motive for any Defendant to have knowingly made a false statement, and have fallen well short of pleading a "cogent" or "compelling" inference of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

---

[17] Plaintiffs also fail to plead or argue that the challenged forward-looking statements were knowingly false when they were made. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112–13 (9th Cir. 2010) (holding that forward-looking statements are not actionable if *either* they were accompanied by meaningful cautionary language *or* they were not knowingly false when made). (*See also* Section II.C.1.)

### a.    Plaintiffs' Fail to Plead a Plausible Motive.

Plaintiffs do not plead any rational motive to knowingly release a "fundamentally broken" game. The far more plausible inference is that Defendants believed Cyberpunk was ready to release on all platforms but ended up performing below their expectations on two older-gen consoles because of unforeseen complications caused by the complexity and size of the game, a global pandemic, and optimizing the game on those consoles. Put differently, the more "cogent and . . . compelling" scenario is that Defendants did their best to make sure any bugs in Cyberpunk were addressed prior to release, and sincerely believed they could do so. *Id.* *See also Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (requiring consideration of all reasonable competing inferences).

Plaintiffs claim Defendants knowingly released a faulty game because they faced "pressure" to do so. (Opp. 32.) That is not a motive pleaded in the CAC, and courts repeatedly have rejected far more specific allegations of "pressure." *See, e.g.*, *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (upholding dismissal despite alleged "mounting pressure from investors to become profitable"); *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1057 (N.D. Cal. 2020) (finding no scienter, despite alleged immense pressure from investors threatening the defendants' jobs). Furthermore, Plaintiffs do not explain why the Company could not have delayed the game further. They state in conclusory fashion that "it became untenable to delay the game further," but explain neither why it was untenable nor why defendants would have chosen the release of a knowingly buggy game, and the negative consequences sure to follow, over an additional delay. (Opp. 3, 32–33.)

Plaintiffs' professed motive that Defendants prematurely released Cyberpunk to "earn substantial revenues" makes no sense. (*Id.*) The Company had been enjoying a highly profitable 2020 prior to Cyberpunk's release. (Ex. U 70 (where the Company reported that net profits had substantially increased year-over-year prior to the game's release).) The consequences that followed Cyberpunk's release,

including numerous refund demands and a share price drop, would have been easily foreseeable if Defendants had known the game would have performance issues on older-gen consoles.  Beyond a short-lived revenue spike, the CAC offers no reason why Defendants would have desired to release Cyberpunk before they believed it to be ready.  And Plaintiffs plead no financial or other motive for Defendants to have wanted such a short-term revenue spike (*e.g.*, allegations that the Company needed capital).  Further, as some of the Company's largest shareholders, Defendants were hit harder than anyone by the stock price decline.  (*See* Mot. 34 (explaining that the Individual Defendants collectively lost over $614 million).)

Plaintiffs attempt to distinguish *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020), arguing that the defendants in *Nguyen* "were unable to release any product at all" without FDA approval, whereas here "Defendants were still able to make millions of sales, albeit less than if they had managed to deliver."  (Opp. 33.)  But that is a concession that Defendants would have made ***more*** money had they waited to release the game with fewer bugs on the older-gen consoles.  Plaintiffs also fail to explain why Defendants would have knowingly traded all the certain and lasting harm that would result from releasing a buggy game prematurely for immediate sales revenue, much of which they would have to refund, instead of waiting to release a game that worked better on the older-gen consoles ***and*** was more profitable.

### b.   Plaintiffs' Media Reports Are Not Sufficiently Reliable to Serve as a Basis for a Finding of Scienter.

Without a motive, Plaintiffs rest their case on the anonymous (and unknown to Plaintiffs) sources mentioned in the New York Times and Bloomberg.com.  The articles do not quote any anonymous source directly, nor do they adequately provide the context in which these anonymous statements were made.  The articles merely repeat non-specific, third-hand employee grumbling about working overtime and meeting tight timelines, which is the nature of video game development.  Critically, the articles do not allege that any ***Defendant*** was aware of any problems with

Cyberpunk prior to its release.  This does not amount to pleading confidential witness testimony "with sufficient particularity to establish their reliability and personal knowledge," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009), a standard that applies no matter the source of the allegations.

Plaintiffs argue that descriptions of anonymous sources need not be detailed if they "appear in detailed media reports."  (Opp. 34.)  But the cases Plaintiffs cite for this proposition say the opposite.  For example, in *In re McKesson HBOC, Inc. Securities Litigation*, the court considered the information in an article because it contained *specific* details demonstrating the reliability of its anonymous sources and because the article corroborated the plaintiff's *separate investigation* which resulted in 15 specific former company employees who cooperated with that investigation being identified in the complaint.  126 F. Supp. 2d 1248, 1272, 1254 (N.D. Cal. 2000) ("Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.").[18]

Here, Plaintiffs did not investigate the facts.  They did not claim to have interviewed former CD Projekt employees and presented no confidential witnesses in their CAC.  The articles themselves do not contain the specific corroborating details required by *Zucco*.  Any argument that Plaintiffs' "investigation," which consisted largely of reading the media articles they cite, was corroborated by the articles themselves, is circular and non-sensical.

### c. Defendants' Post-Release Statements Do Not Demonstrate Scienter.

Plaintiffs' next attempt to meet their scienter burden is to claim that

---

[18] *See also In re Apple Inc. Sec. Litig.*, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) (giving weight to the statements of anonymous sources only because they were corroborated by highly specific, numbers-based information from other sources); *Dean v. China Agritech, Inc.*, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) (failing to address, or even mention, the use of confidential witnesses or anonymous sources); *cf. In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007) (requiring "specific facts to corroborate the reliability" of anonymous source statements in newspaper articles).

Defendants confessed after-the-fact to pre-release knowledge.  None of the statements they quote say any such thing.  For example, Plaintiffs cite a December 18, 2020, Bloomberg.com article[19] which says, based on third-hand information, that "the board" stated it would "take responsibility" for Cyberpunk's problematic release.  (Opp. 35.)  "[T]aking responsibility" is *not* an admission of fraud.

In another example, Mr. Kiciński stated that the Company was "too focused on releasing the game" and "ignored the signals about the need for additional time to refine the game on the last-gen consoles." (Opp. 36.)  This statement was made *after* the purported class period ended and is merely an acknowledgment that, with the benefit of hindsight, Defendants could have spent more time optimizing the game on the older-gen consoles.  It is *not* an admission that Defendants were aware of these signals prior to Cyberpunk's release.  *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014 at *10 (an after-the-fact statement must essentially state 'I knew it all along' to constitute an admission).  Plaintiffs' "red flags" cases are distinguishable because Plaintiffs fail to plead that Defendants had similarly *specific* knowledge.[20]

Neither of these statements reflect on any Defendant's state of mind *prior* to the release of the game.  And they do not demonstrate that any pre-release statements were knowingly false "at the moment [they were] made." *See In re Stratasys Ltd. S'holder Sec. Litig.*, 864 F.3d 879, 881 (8th Cir. 2017) (finding no scienter where defendants allegedly rushed to market a highly anticipated product, touting its

---

[19] Defendants did not "completely ignore" the Bloomberg.com article.  (Opp. 34.) Defendants referred to "certain news articles" in their opening brief (Mot. 34) and used "[f]or example" when describing another Bloomberg article (Mot. 35). Defendants' arguments regarding anonymous sources in media reports apply to *all* of the articles Plaintiffs cite, including the December 18, 2020, Bloomberg article purporting to summarize an internal CD Projekt meeting.

[20] *See Reese v. Malone*, 747 F.3d 557, 571 (9th Cir. 2014) (defendant knew of ongoing high corrosion rates in pipelines but publicly stated otherwise); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (defendant knew about audits directly contradicting the company's projections); *In re New Century*, 588 F. Supp. 2d 1206, 1229 (C.D. Cal. 2008) (witness accounts and a report showed that company executives and officers knew the company was issuing low-quality loans with little underwriting and few internal controls).

quality, reliability, and performance while supposedly knowing it was defective, because plaintiffs could not plead contemporaneous knowledge of the defects).

### d. Plaintiffs' Allegations of "Obvious Defects" Are Insufficient to Establish Scienter.

Finally, Plaintiffs rely on the "ElBuggado 2020" video to demonstrate Defendants' pre-release knowledge of bugs. (Opp. 35–36.) But this video was merely a compilation of amusing glitches and gameplay created purposefully by developers as a joke. (Ex. BB 98.) It was not an exposé on Cyberpunk's failings. Further, while the video's name implies it may have been compiled in 2020, Plaintiffs do not know and cannot allege when each scene was recorded. Scenes easily could have been recorded in early 2020, or even earlier in Cyberpunk's multi-year development, before extensive improvements were made prior to the game's release.

Moreover, nothing suggests any *Defendant* had foreknowledge of the bugs in the video. Plaintiffs misquote Mr. Kiciński in alleging that he stated Defendants were "aware of all of the bugs." (Opp. 38.) Mr. Kiciński actually said, "in terms of bugs—we are, of course, aware of them. Such a big game can't be entirely bug-free. That's rather obvious, but we believe the level of bugs will be low enough that they will not stand out from the perspective of gamers." (*Id.*) "*Are* aware" is not the same as "*were* aware." He did *not* admit that Defendants knew of specific bugs pre-release, and certainly not the specific bugs depicted in ElBuggado 2020.

## III.   CONCLUSION

For the foregoing reasons, the CAC should be dismissed.

Dated:      November 17, 2021          COOLEY LLP

By: */s/ Koji F. Fukumura*
_____
     Koji F. Fukumura

Attorneys for Defendants
CD Projekt S.A., Adam Michał
Kiciński, Marcin Iwiński, Piotr Marcin
Nielubowicz, and Michał Nowakowski