1
2
3
4
5

Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

6
7

*Lead Counsel for Lead Plaintiff and
the Class*

8

9
10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

11
12

ANDREW TRAMPE, Individually and
on behalf of all others similarly situated,

13

Plaintiff,

14

15

v.

16
17
18

CD PROJEKT S.A., ADAM MICHAL
KICIŃSKI, MARCIN IWIŃSKI,
PIOTR MARCIN NIELUBOWICZ, and
MICHAŁ NOWAKOWSKI,

19

20

Defendants.

21

Case No. CV 20-11627 FMO (RAOx)

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION
SETTLEMENT**

JURY TRIAL DEMANDED
Date: February 24, 2022
Time: 10:00 a.m.
Courtroom: 6D
Judge: Hon. Fernando M. Olguin

22
23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

24
25
26
27
28

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................1

II. OVERVIEW OF THE LITIGATION ........................................................2

  A. Plaintiff's Allegations ........................................................................2

  B. Procedural History and Settlement...................................................3

III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.......4

  A. The Settlement Class Satisfies Rules 23(a)......................................5

    1. Numerosity .....................................................................................5

    2. Commonality ..................................................................................5

    3. Typicality........................................................................................6

    4. Adequacy ........................................................................................7

  B. The Settlement Class Satisfies Rule 23(b)(3)...................................8

    1. Predominance .................................................................................8

    2. Superiority ......................................................................................9

  C. Ascertainability ................................................................................10

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL...10

  A. Plaintiff and Lead Counsel Adequately Represented the Class..........12

  B. The Settlement is the Product of Arm's-Length Negotiations ............13

  C. The Relief Provided to the Class is Adequate .................................13

    1. The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation ....................................13

    2. Risk of Maintaining Class Action Status Through Trial .................15

  D. The Remaining Rule 23(e)(2)(C) Factors Support Approval.............16

    1. The Methods of Distributing Relief and Processing Claims.............16

i

2.      Proposed Attorneys' Fees ....................................................**16**

3.      Other Agreements ...............................................................**17**

E.    **The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff** ............................................**17**

F.    **The Remaining Ninth Circuit Factors Favor Approval** .....................**18**

1.      **The Amount Offered in Settlement** ....................................**18**

2.      **The Extent of Discovery and Stage of Proceedings** .........................**20**

3.      **Experienced Counsel's Recommendations** ....................**20**

V.    **THE COURT SHOULD APPROVE THE NOTICE PLAN** ................**21**

A.    **The Notice Plan is Adequate** .................................................**21**

B.    **The Notice is Adequate** ........................................................**21**

C.    **Incentive Award** ...................................................................**23**

D.    **Cy Pres Award** .....................................................................**23**

E.    **Release** ..................................................................................**23**

F.    **CAFA Notice** .......................................................................**24**

VI.    **THE PROPOSED SCHEDULE** ..........................................................**24**

VII.    **CONCLUSION** ..................................................................................**25**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Amchem Prod., Inc. v. Windsor*,
　521 U.S. 591.............................................................................................8, 9

*Baker v. SeaWorld Entm't, Inc.*,
　No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ......21

*Booth v. Strategic Realty Tr., Inc.*,
　No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) .............10

*Cheng Jiangchen v. Rentech, Inc.*,
　No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...17

*Christine Asia Co. v. Yun Ma*,
　No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........17

*Eminence Cap., LLC v. Aspeon, Inc.*,
　316 F.3d 1048 (9th Cir. 2003) ...........................................................................14

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ......................................................... 11, 12, 13, 18

*Hefler v. Wells Fargo & Co.*,
　No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........17, 18

*Hefler v. Wells Fargo & Co.*,
　No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............14

*In re "Agent Orange" Prod.* Liab. Litig.,
　597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
　298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................21

*In re China Med. Corp. Sec. Litig.*,
  No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal. May 16, 2013)....5, 8

*In re Cooper Companies Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ........................................................................9

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................10

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) ............................................................................10

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................14

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) .......................................................................6

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............22

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................14, 18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................16, 19

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ....19

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ...............................................................16

*In re Silver Wheaton Corp. Sec. Litig.*,
  No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017) ........
  ....................................................................................................................5, 6, 7

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................14

iv

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................20

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) .........................................................................14

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......6, 9, 13

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................8

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010)...6, 7

*Mild v. PPG Indus., Inc.*,
No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) .......12

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ...............................................................................................4

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................20

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ...........................................................................8

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .........................................................................10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)............................................................ 10, 14, 15, 19

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)................................................................................22

*Salazar v. Midwest Servicing Grp., Inc.*,
No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018)..........15

*Turocy v. El Pollo Loco Holdings, Inc.*,
   No. SACV151343DOCKESX, 2018 WL 3343493 (C.D. Cal. July 3, 2018) ...4, 8

*Vikram v. First Student Mgmt., LLC*,
   No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ...........19

*Vinh Nguyen v. Radient Pharms. Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012) .........................................................................5

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)....17, 18

*Wong v. Arlo Techs., Inc.*,
   No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)..........13

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...........8

**<u>Statutes</u>**

15 U.S.C. § 78u-4(a)(7)(A)-(F) ................................................................................22

28 U.S.C. §1715...................................................................................................21

California Civil Code § 1542..................................................................................24

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................... passim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 20-11627 FMO (RAOx)

1    Lead Plaintiff James W. Gordley, and additional plaintiffs Steven Shaginyan
2    and Phillip Trefethen ("Plaintiffs") submit this memorandum in support of its
3    Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiffs
4    request that the Court: (1) preliminarily certify the Settlement Class and appoint
5    class representative and class counsel; (2) preliminarily approve the Settlement on
6    the terms set forth in the Stipulation of Settlement dated January 27, 2022
7    ("Stipulation"), filed concurrently herewith; (3) approve the proposed form and
8    method of notice to the Settlement Class, and directing that such notice be
9    disseminated; and (4) schedule a Settlement Hearing to consider final approval of
10   the Settlement and related matters.[1]

11   **I.    PRELIMINARY STATEMENT**

12   The Parties have reached a settlement to resolve the claims in the above-
13   captioned securities class action ("Action") for $1,850,000 ("Settlement"). The
14   Settlement provides a fair, reasonable, and adequate result for investors despite
15   significant risk. Plaintiffs now seek preliminary approval of the Settlement.
16   Preliminary approval does not require the Court to determine whether it should
17   grant final approval of the Settlement at this point. Rather, the Court need only
18   determine whether the Settlement is *approvable*, in that it falls within the range
19   that the Court reasonably could approve. If the Court grants preliminary approval,
20   Plaintiff will provide notice to the Settlement Class, soliciting claims on, objections
21   to, and exclusions from the Settlement. At the Settlement Hearing, with the
22   Settlement Class Members' reactions in hand, the Court will determine whether to
23   finally approve the Settlement.

24   The Parties engaged in extensive arm's-length settlement discussions over

---

[1] All capitalized terms not otherwise defined shall have the same meanings ascribed to them in the Stipulation.

1

the phone and email. The resulting Settlement is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs faced several obstacles if litigation were to continue including significant disputes over the amount of potentially recoverable damages, the availability of proof, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and the real danger that Plaintiffs would not be able to obtain a larger sum if litigation were to continue, as Defendants are located outside the United States and collection of any judgment would be burdensome.

The Court must also preliminarily certify the Settlement Class to allow for notice to be distributed to Settlement Class Members. Certification of a settlement class is nearly automatic in securities class actions, and this case is no outlier. The Court need not decide at this stage whether to finally certify a settlement class.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the proposed documents that Plaintiff will use to communicate notice – the Long Notice, Summary Notice, and Postcard Notice (together "Notice").[2] The Notice and the Notice Plan closely track the forms and methods routinely used to communicate notice in securities class actions, and they satisfy the requirements of Rule 23. For these reasons the Court should preliminarily certify the Settlement Class and preliminarily approve the Settlement, Notice, and Notice Plan.

## II.   OVERVIEW OF THE LITIGATION

### A.   Plaintiff's Allegations

CD Projekt, SA is a Polish video game developer. As a relatively small video game developer, CD Projekt competes with larger developers by focusing almost all of the company's efforts on one single game at a time, releasing a new title once

---

[2] Proposed versions of the Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim.

1    every several years. From 2015 to 2020, that game was Cyberpunk 2077.

2    Beginning in January of 2020 CD Projekt assured the public that Cyberpunk 2077

3    was a complete and playable game and was pending final refinements before

4    release on multiple platforms, including the highly popular PlayStation 4 and Xbox

5    One gaming consoles. Throughout 2020, CD Projekt assured the public that it had

6    essentially completed versions of the game for those two consoles. In reality,

7    however, the games were virtually unplayable on the PlayStation 4 and Xbox One

8    consoles. Having delayed the game several times however, CD Projekt's

9    executives were determined to release the game in 2020 and reap the financial

10   rewards, whether or not the game was actually finished. CD Projekt attempted to

11   conceal the fact that the Sony PlayStation 4 and Microsoft Xbox One games did

12   not work until the last moment by refusing to provide advance copies of those

13   versions of the game to reviewers. However, when CD Projekt released the game,

14   the problems became immediately obvious, with fans expressing their outrage on

15   the internet and demanding refunds. Sony and Microsoft responded to this

16   customer outrage, with Microsoft placing a warning label about the game's lack of

17   functionality on their electronic Xbox store, and Sony removing the game from

18   their electronic PlayStation store altogether. As a result CD Projekt's price

19   declined by more than 25%, harming investors.

20           **B.    Procedural History and Settlement**

21           Two putative securities class actions were filed on December 24, 2020 and

22   January 14, 2021, respectively, alleging violations of Sections 10(b) and 20(a) of

23   the Securities Exchange Act of 1934 ("Exchange Act"). On May 14, 2021, the Court

24   consolidated the actions and appointed James Gordley as Lead Plaintiff and The

25   Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Dkt. No. 38. On June 28,

26   2021 Plaintiffs filed the Consolidated Amended Complaint. Dkt. No. 41. On August

27   12, 2021 Defendants filed their motion to dismiss the Consolidated Amended

28   Complaint. Dkt. No. 48. Plaintiffs filed their opposition on October 4, 2021. Dkt.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 20-11627 FMO (RAOx)

Nol. 51. Defendants filed their reply on November 17, 2021. Dkt No. 55. Shortly thereafter, the parties began to negotiate a settlement and on November 29, informed the Court that they had reached a settlement in principle. Dkt. No. 57.

## III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In preliminarily approving the proposed Settlement, the Court must consider whether to certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff requests that the Court preliminarily certify a Settlement Class consisting of "all Persons (other than those Persons identified below in this paragraph) who acquired CD Projekt-related equity securities publicly traded in domestic transactions from January 16, 2020, through December 17, 2020, both dates inclusive, and who were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any Person excluded under this subsection (b), has or had a majority ownership interest at any time." Stipulation ¶ 1.34 (defining "Settlement Class"). This definition of the class refines the class definition set forth in the Corrected Consolidated Amended Complaint of "persons or entities who purchased publicly traded CD Projekt securities between January 16, 2020 and December 17, 2020, inclusive." The parties agreed to this definition to make clear that the class only applies to domestic transactions in CD Projekt securities in accordance with *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), which restricts the scope of the Securities and Exchange Act to transactions in domestic securities and domestic transactions in other securities.

Courts in the Ninth Circuit, including this District, routinely certify class actions such as this one, alleging violations of the federal securities laws. *See, e.g., Turocy v. El Pollo Loco Holdings, Inc.*, No. SACV151343DOCKESX, 2018 WL

3343493 (C.D. Cal. July 3, 2018); *In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017). The Court should preliminarily certify the Settlement Class to permit notice to Settlement Class Members.

## A.    The Settlement Class Satisfies Rules 23(a)

Rule 23 governs class certification and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of those of the class ("typicality"); and (4) the representative party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

### 1.    Numerosity

For numerosity purposes, "impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). "As a general rule, classes of forty or more are considered sufficiently numerous." *Id.*, 2013 WL 12126754 at *2.[3] In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises purchasers of CD Projekt securities, which traded on the OTC markets in the United States. Thus, the Settlement Class satisfies numerosity.

### 2.    Commonality

The "commonality requirement is generally construed liberally," and even

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

one significant common issue of law or fact may suffice to show commonality. *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11507255, at *3 (C.D. Cal. Aug. 27, 2010). This case involves several common questions of law and fact, including: (1) whether Defendants made false or misleading public statements or omissions during the Class Period; (2) whether Defendants acted with scienter; (3) whether Defendants' misrepresentations artificially inflated the market price of CD Projekt securities during the Settlement Class Period; and (4) whether Settlement Class Members were damaged by Defendants' statements and omissions. Commonality is satisfied even though the amount to which each class member is entitled will differ, because the issues described above are each common to the Settlement Class. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)"). Thus, the Settlement Class satisfies commonality.

### 3. Typicality

The typicality requirement ensures that the interests of the representative plaintiff align with those of the Class. *Silver Wheaton*, 2017 WL 2039171 at *7. "[T]ypicality is satisfied if the plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Plaintiffs' claims are reasonably co-extensive with those of the Settlement Class. Plaintiffs purchased CD Projekt securities during the Settlement Class Period and suffered significant losses thereby. *See* Declaration of James Gordley ("Gordley Dec.") attached hereto as Exhibit 1 to the Declaration of Laurence Rosen (Rosen Dec.) ¶9, Declaration of Steven Shaginyan ("Shaginyan Dec."), attached hereto as Exhibit 2 to the Rosen Dec. ¶9, and the Declaration of Phillip Trefethen,

("Trefethen Dec."), attached hereto as Exhibit 2 to the Rosen Dec. ¶9. There is no indication that Plaintiffs' claims are atypical of those of the Settlement Class, or that a unique defense applies to Plaintiffs' claims. *See Semtech*, 2010 WL 11507255 at *4-5 (finding typicality was met despite certain unique factors). Thus, Plaintiff satisfies the typicality requirement.

### 4. Adequacy

A representative plaintiff is adequate if they have no conflicts of interest with the class and show that they and their counsel will prosecute the action vigorously on behalf of the class. *Semtech*, 2010 WL 11507255 at *5. Plaintiffs have submitted declarations in connection with the filing of the instant motion indicating that they have reviewed the complaint and relevant documents in this litigation and stand ready and willing to represent the interests of the class. Gordley Dec. ¶11, Shaginyan Dec. ¶11, Trefethen Dec. ¶11. There is no indication of any conflict of interests between Plaintiff and the Settlement Class, thus Plaintiff is an adequate class representative. *Silver Wheaton*, 2017 WL 2039171 at *7-8.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has been involved in this action from the beginning, conducting a pre-filing investigation, filing an initial complaint, retaining an investigator to interview former CD Projekt employees, retaining a damages expert to evaluate the case, filing an amended complaint, formalizing the settlement, and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases to determine when a settlement would be beneficial to the class, and when to continue litigating. This Court and others around the country have

consistently found Rosen Law to be well-suited as class counsel in securities class actions. *See El Pollo Loco*, 2018 WL 3343493, at *7 (appointing Rosen Law as class counsel); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"). Lead Counsel will adequately represent the Settlement Class.

## B.  The Settlement Class Satisfies Rule 23(b)(3)

Plaintiff requests that the Court preliminarily certify the Settlement Class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority").

### 1.  Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 and 625 (1997). Here, no question exists that issues surrounding Defendants' alleged misconduct, such as whether their statements were false or misleading, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiff and the Settlement Class, are common to each member of the Settlement Class. Predominance is satisfied where a plaintiff alleges that, as here, "many purchasers have been defrauded over time by similar misrepresentations." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006).

Allegations arising under the federal securities laws typically support a finding of predominance as they arise out of common questions and issues. *China*

8

*Med.*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class."); *Zynga*, 2015 WL 6471171, at *7 (for securities class actions, the "same set of operative facts and a single proximate cause applies to each proposed class member."). While the amount of damages may differ among members of the Settlement Class, Plaintiff contends that liability and the proper measure of damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Thus the Settlement Class satisfies predominance.

### 2.     Superiority

For a settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors support certification. As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. A class action avoids the duplication of efforts and inconsistent rulings. *Zynga*, 2015 WL 6471171, at *7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability.

Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."). By avoiding repetitive litigation and efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement. The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

### C.    Ascertainability

The Ninth Circuit has recognized that certification of settlement classes requires "heightened attention to the definition of the class." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019). A definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Rarely are there definitional issues for securities class action settlements as proposed classes for these actions and settlements are definite and ascertainable. Here, the proposed class is clearly defined as investors who acquired publicly traded CD Projekt related securities in domestic transactions during the Settlement Class Period. *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) (finding the class definition "satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Thus, the Settlement Class definition is suitable for certification and satisfies ascertainability.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned." *Hyundai*, 926 F.3d at 556; *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("the Ninth Circuit has a strong judicial policy that favors [approving] settlements, particularly where complex class action litigation is concerned.") (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San*

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 20-11627 FMO (RAOx)

*Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.")).

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, in that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, the Ninth Circuit uses the following factors for preliminary approval, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Before notice of the Settlement is disseminated, it is not possible to gauge the reaction of the class. Plaintiffs, however, support the Settlement.

A preview of the factors considered by courts in granting final approval demonstrates that this Settlement is well within the range of possible approval. The proposed Settlement easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors. The Court will likely be able to approve the Settlement as fair, reasonable and adequate.

## A. Plaintiff and Lead Counsel Adequately Represented the Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth Circuit requires courts to resolve two questions to determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout this Action. Plaintiffs have no antagonistic interests to other class members, its claims are typical of Settlement Class Members' claims, and Plaintiff shares an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Further, Plaintiffs have worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for itself and the Settlement Class.

As discussed above, Plaintiffs retained highly experienced counsel with a successful track record of representing investors in similar securities cases. *See also* Dkt. No. 15-4 (Rosen Law Firm Resume). Lead Counsel has vigorously prosecuted the Action, and will continue to do so through the settlement approval and distribution process.

12

**B.      The Settlement is the Product of Arm's-Length Negotiations**

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The negotiations between Lead Counsel and Defendants' counsel that produced the Settlement were serious and informed. Lead Counsel conducted a thorough review of CD Projekt's securities filings and publicly available information concerning the Company, leading Plaintiffs to file a detailed Amended Complaint setting out a straightforward theory of securities fraud. Lead Counsel then reviewed and opposed Defendants' motion to dismiss the Amended Complaint. Through the motion to dismiss briefing and settlement negotiations, Plaintiffs and Lead Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *See Zynga*, 2015 WL 6471171, at *9.

**C.      The Relief Provided to the Class is Adequate**

Pursuant to Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This requirement incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021) (*citing Hanlon*, 150 F.3d at 1026). These factors support preliminary approval of the Settlement.

**1.      The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation**

In assessing whether the Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including

13

the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *Officers for Justice*, 688 F.2d at 625. The risks of continued litigation here are considerable. The PSLRA made the pleading stage of securities litigation a "technical and demanding corner of the law." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Amended Complaint has not yet been tested by a motion to dismiss, and there are distinct risks here to protracted litigation. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain.").

Defendants deny any wrongdoing and would present a multi-pronged defense. Plaintiffs and Lead Counsel believe that the case has merit, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiffs' claims successfully through a motion to dismiss, class certification, extensive discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial."). Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover,

even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."); *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval).

Even if Plaintiffs defeated Defendants' pending motion to dismiss, continued litigation would be complex, uncertain, costly, and lengthy. Further litigation would likely require extensive document discovery, including of likely many documents written in Polish, depositions of numerous witnesses, many of whom reside in Poland, submitting expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without certainty of the outcome. By contrast, the Settlement provides a favorable, immediate recovery and eliminates the risk, delay, and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.

The Settlement resulted from balancing the risks, costs, and delay inherent in complex cases with respect to all parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the $1.85 million Settlement is a reasonable and adequate recovery that is in the Settlement Class's best interests.

### 2. Risk of Maintaining Class Action Status Through Trial

The Settlement was reached before Plaintiffs moved for class certification.

While Plaintiffs believe that class certification would be appropriate (*see* Section III, *supra*), it cannot be assured, and Defendants could attempt to alter or amend a class certification order. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

### D.    The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

#### 1.    The Methods of Distributing Relief and Processing Claims

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiff requests that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator. If SCS is appointed it will, under Lead Counsel's guidance, process claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice. The method proposed here is both effective and necessary, as neither Plaintiff nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund. The Claims Administrator shall be capped at $100,000 for administration fees prior to the Effective Date and an additional $50,000 after the Effective Date, absent further order from the Court. ¶3.3.

#### 2.    Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees not to

16

exceed 30% of the Settlement, or $555,000. An award of attorneys' fees of up to 30% of the Settlement Amount is reasonable and consistent with the fees awarded in similar actions in this Circuit, including by this Court. *E.g., Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) (Carter, J.) (awarding 28% of $2.5 million settlement); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (awarding one-third of $2,050,000 settlement fund where settlement was reached as a motion to dismiss was still pending). Lead Counsel will receive no payment, and has not, until after the Court issues an order awarding attorneys' fees following the Settlement Hearing.

### 3.   Other Agreements

The Parties also executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons opting out reaches a certain threshold, CD Projekt may terminate the Settlement. Stipulation ¶10.3. The terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.")

### E.   The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member,

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 20-11627 FMO (RAOx)

including Plaintiff. The Plan of Allocation proposed in the Long Notice provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in CD Projekt securities during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold shares of CD Projekt securities. The Plan of Allocation was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiff's damages expert. Settlement Class Members' recoveries will be based upon the relative losses they sustained.

Plaintiffs will receive a *pro rata* distribution from the Net Settlement Fund per the plan of allocation, just like all other Settlement Class Members. *Nguyen*, 2014 WL 1802293, at *5 ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

Plaintiffs will also seek reimbursement of costs it incurred representing the Settlement Class, as authorized by the PSLRA. *Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action settlement).

### F.   The Remaining Ninth Circuit Factors Favor Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2). These factors support preliminary approval.

### 1.   The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler*, 2018 WL 4207245, at *9. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 20-11627 FMO (RAOx)

1   (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Vikram v. First Student Mgmt.,*
2   *LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019)
3   ("This determination requires evaluating the relative strengths and weaknesses of
4   the plaintiffs' case"). A settlement must be evaluated in the context of recognizing
5   that parties must make compromises to reach an agreement. *Officers for Justice*,
6   688 F.2d at 624.

7         The $1.85 million Settlement Amount is reasonable and warrants preliminary
8   approval. The Settlement recovers approximately 16.7% of the maximum estimated
9   damages of $11.02 million under Plaintiff's best-case scenario, as estimated by
10  Plaintiff's damages expert. This best-case scenario assumes that: (i) Plaintiff is able
11  to succeed on a motion to dismiss, at summary judgment, and at trial; (ii) the Court
12  certifies the same class period as the Settlement Class Period; and (iii) the Court
13  and jury accepted Plaintiff's damages theory, including proof of loss causation.
14  Anything less than a complete victory would decrease, or potentially eliminate,
15  recoverable damages.

16        Moreover, the $1.85 million Settlement is an extremely favorable result
17  because Defendants are all located abroad in Poland and, had Plaintiffs achieved a
18  favorable result at trial, they would nonetheless face significant hurdles and
19  expenses enforcing any judgment abroad.

20        The percentage of maximum damages recovered is reasonable and well
21  within the range of other securities class action settlements with similar total
22  damages. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re*
23  *Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL
24  6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Officers for*
25  *Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to
26  only a fraction of the potential recovery does not per se render the settlement
27  inadequate or unfair."). According to Cornerstone Research, approximately 13% of
28  securities class actions settled for less than $2 million in 2020, and the median

19

recovery in cases such as this one alleging Rule 10b-5 claims was approximately 5.3% of estimated damages in 2020, and 4.9% between 2011-2019.[4]

### 2.     The Extent of Discovery and Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing CD Projekt's public filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning CD Projekt including research reports by securities and financial analysts; (iii) retaining an investigator to independently interview former CD Projekt employees and other third parties.

### 3.     Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). Lead Counsel have extensive securities litigation experience and obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's support for the reasonableness of this Settlement supports

---

[4] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2020 Review and Analysis (Cornerstone Research), at 6 and 18, *available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis

preliminary approval. Defendants are represented by skilled securities practitioners at Cooley LLP, who were at least as well-informed regarding the case, and their representation of Defendants was equally vigorous. That experienced and informed counsel agreed to the Settlement supports preliminary approval.

## V.   THE COURT SHOULD APPROVE THE NOTICE PLAN

### A.   The Notice Plan is Adequate

Rule 23(e) requires that notice of the Settlement be provided to Settlement Class Members in such manner as the Court directs. The proposed Notice Plan includes: (1) emailing links to the Long Notice and Proof of Claim, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (2) posting the Long Notice, Proof of Claim, and Stipulation on a Settlement website maintained by SCS; (3) allowing Settlement Class Members to submit their claims electronically at the Settlement website; (4) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (5) publishing the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily.*

Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website). Defendants will provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq*.

### B.   The Notice is Adequate

As required by Rule 23(c)(2), the Notice will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and the right of Settlement Class Members to opt out or object to the Settlement, Plan of

Allocation, and/or the proposed attorneys' fees and expenses. The Ninth Circuit has held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication. *See, e.g., In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at \*23–24 (S.D.N.Y. Dec. 23, 2009).

The proposed Long Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. In plain English, the proposed Long Notice provides: (a) the rights of Settlement Class Members, including the manner in which objections may be lodged and exclusions may be requested and instructions on how to complete and submit a Proof of Claim to the Claims Administrator; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan; (f) the maximum fees and expenses and award to Plaintiff to be sought by Lead Counsel; (g) the definition of the Settlement Class; (h) the reasons the Parties have proposed the Settlement; (i) the estimated distribution per damaged share; (j) the Settlement Class's claims and issues; (k) the Parties' disagreement over damages and liability; (l) contact information for all counsel and the Court; and (m) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of up to 30% of the Settlement Amount, reimbursement of expenses of up to $40,000, and an award to Plaintiff of up to $7,500 each, all to be paid from the Settlement

Fund.

Accordingly, the Notice Plan and the Notice each satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

### C.    Incentive Award

At final approval, Plaintiffs will request an award up to $7,500 each based on their work done on this case. As set forth in their declaration, no plaintiff has conditioned their agreement to settle this case upon receipt of any incentive compensation. Gordley Dec. ¶14, Shaginyan Dec. ¶14, Trefethen Dec. ¶14.

### D.    Cy Pres Award

The Stipulation of Settlement contemplates that any cy pres award shall be paid to the Howard University School of Law Investor Justice and Education Clinic (the "IJEC). Stipulation ¶7.10. The IJEC is dedicated to providing hands-on legal training and education for law students and providing representation to investors in FINRA arbitrations. http://law.howard.edu/content/investor-justice-and-education-clinic-ijec. The IJEC furthers the protection of investors through the enforcement of securities laws and investor regulations. Plaintiffs' Counsel have no relationship with the IJEC.

### E.    Release

The Stipulation of Settlement releases known and unknown claims "that have been or could have been asserted in the Action by or on behalf of any of the Releasing Parties, in any capacity, which arise out of, are based upon, or concern or relate in any way to the purchase, acquisition, holding, sale, or disposition of any CD Projekt-related equity securities publicly traded in domestic transactions during the Settlement Class Period, including but not limited to any claims alleged in the Action and any claims related to the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, related to, set forth, alleged or referred to in the Action.

Notwithstanding the foregoing, 'Released Claims' does not include claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement." Stipulation ¶1.29. The release is tailored to the claims asserted in the Complaint by specifying that that the claims must be related to domestic transactions of CD Projekt related equity securities publicly traded in domestic transactions. This restriction avoids any doubt that claims related to non-domestic transactions, or transactions in non-equity securities, such as bonds, will be restricted by this Settlement. The Settlement further restricts the settlement to claims that could have been brought in this action, and that arise out of transactions during the settlement class period. This provision restricts the settlement to matters that were the subject matter of this action – Defendants' statements or omissions regarding CD Projekt during the class period that could be material to investors. The Stipulation does contemplate a waiver pursuant to California Civil Code § 1542. However, because the scope of released claims is itself appropriately tailored, the waiver itself does not constitute a blanket waiver of claims unrelated to this action.

### F.    CAFA Notice

Pursuant to the Stipulation, Defendants shall provide for notice under the Class Action Fairness Act. Stipulation ¶5.4.

## VI.    THE PROPOSED SCHEDULE

Plaintiff respectfully proposes the following procedural schedule. The schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiff requests the Court use at least the same or greater intervals between each event listed in the schedule to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
|-------|------------------------|
| Date for the Settlement Hearing. | At least 100 days from Preliminary Approval Order (Preliminary Approval Order ¶6) |
| Emailing link to Settlement webpage with Long Notice and Proof of Claim; Mailing the Postcard Notice | Within 20 Business Days following Prelim. App. Order (Preliminary Approval Order ¶14) |
| Posting the: Stipulation; Preliminary Approval Order; Long Notice; and Proof of Claim on the Settlement website. | Within 20 business days following entry of the Prelim. App. Order (Preliminary Approval Order ¶17) |
| Publication of the Summary Notice. | Within 10 days from emailing link to Long Notice/Mailing Postcard (Preliminary Approval Order ¶18) |
| Plaintiff to file papers in support of the Settlement, the Plan, and motion for attorneys' fees and expenses. | No later than 28 days prior to Settlement Hearing (Preliminary Approval Order ¶30) |
| Deadline for requests for exclusion and for objections | No later than 21 days prior to Settlement Hearing (Preliminary Approval Order ¶¶22, 26) |
| Deadline for Proof of Claims. | No later than 30 days prior to Settlement Hearing (Preliminary Approval Order ¶20(a)) |
| Plaintiff to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses. | No later than 14 days prior to Settlement Hearing (Preliminary Approval Order ¶31) |

## VII.    CONCLUSION

For the foregoing reasons, the Court should enter the Preliminary Approval Order, which will: (a) preliminarily certify the Settlement Class; (b) preliminarily approve the Settlement; (c) approve the Notice Plan and direct dissemination of the Notice; and (d) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

| | |
|---|---|
| 1 | Dated: January 27,2022 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Laurence M. Rosen*

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Jonathan Stern (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jstern@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*