1
2
3
4
5
6
7        **UNITED STATES DISTRICT COURT**

8        **CENTRAL DISTRICT OF CALIFORNIA**

9

10   ANDREW TRAMPE, individually, and on          Case No. CV 20-11627 FMO (RAOx)
     behalf of himself and all others similarly
11   situated,

12                      Plaintiffs,              **ORDER RE: MOTION FOR PRELIMINARY**
                                                **APPROVAL OF CLASS ACTION**
13        v.                                     **SETTLEMENT**

14   CD PROJEKT S.A., et al.,

15                      Defendants.

16

17        Having reviewed and considered all the briefing filed with respect to the Motion for

18   Preliminary Approval of Class Action Settlement (Dkt. 78, "Motion") filed by lead plaintiff James

19   W. Gordley ("plaintiff" or "Gordley") and additional plaintiffs Steven Shaginyan ("Shaginyan") and

20   Phillip Trefethen ("Trefethen"), and the oral argument presented at the hearing on April 7, 2022,

21   the court concludes as follows.

22                                          **BACKGROUND**

23        On December 24, 2020, Andrew Trampe filed this filed this action on behalf of himself and

24   all others similarly situated against CD Projekt S.A. ("CD Projekt"), Adam Michal Kicinski

25   ("Kicinski"), Piotr Marcin Nielubowicz ("Nielubowicz"), Michal Nowakowski ("Nowakowski"),

26   asserting violations of the Securities Exchange Act and associated regulations.  (See Dkt. 1,

27   Complaint at ¶¶ 7, 9-11 & 44-59).  A related action was filed shortly thereafter.  (See Dkt. 38,

28   Court's Order of May 14, 2021, at 1).  On May 14, 2021, the court consolidated the actions and

appointed Gordley as lead plaintiff[1] and The Rosen Law Firm, P.A. as lead counsel.  (See id. at 6-7).

On July 30, 2021, plaintiff filed the operative Corrected Consolidated Class Action Complaint [] ("Consolidated Complaint"), asserting two federal securities claims on behalf of a proposed class of persons who purchased or otherwise acquired publicly traded CD Projekt securities between January 16, 2020, and December 17, 2020: (1) § 10(b) of the Securities Exchange Act of 1934 ("Securities Exchange Act"), 15 U.S.C. §§ 78j et seq., and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against CD Projekt, Kicinski, Nielubowicz, Nowakowski, and Marcin Iwinski ("Iwinski") (collectively, "defendants"); and (2) § 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78t et seq., against  defendants Kicinski, Nielubowicz, Nowakowski, and Iwinski.  (See Dkt. 43-1, "Consolidated Complaint" at ¶¶ 1, 10, 12-15, 92 & 101-16).  The Consolidated Complaint alleges that defendants made materially false or misleading statements regarding CD Projekt's Cyberpunk 2077 ("Cyberpunk") video game.  (See id. at ¶¶ 39-46).  Plaintiff seeks damages, attorney's fees and costs, and "such other and further relief as this Court may deem just and proper."[2]  (Id. at Prayer for Relief).

After pre-filing and post-filing investigation, motion practice, expert consultation, arm's-length settlement negotiations, (see Dkt. 78-1, Memorandum Of Points and Authorities in Support of Plaintiffs' Unopposed Motion [ ] ("Memo.") at 3-4, 7, 13 & 20), the parties "reached a settlement in principle" in November 2021.  (See Dkt. 57, Stipulation at 2).  The parties memorialized the terms of the settlement in January 2022, (see Dkt. 66, Stipulation of Settlement at 2), and filed an amended settlement agreement in April 2022 after a hearing on plaintiff's initial motion for preliminary approval.  (See Dkt. 77, "Amended Settlement Agreement" at  ¶ 1.34).

---

[1]   Although Shaginyan and Trefethen joined Gordley in filing the Motion and operative complaint, the court refers only to Gordley as plaintiff throughout this Order because Shaginyan and Trefethen do not seek appointment as class representatives.  (See Dkt. 78, Motion at 2) (moving for an order appointing lead plaintiff Gordley as class representative).

[2]   Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

The parties have defined the settlement class as "all Persons . . . who acquired CD Projekt-related equity securities publicly traded in domestic transactions from January 16, 2020, through December 17, 2020, both dates inclusive, and who were damaged thereby." (Dkt. 77, Amended Settlement Agreement at ¶ 1.34).[3]  Pursuant to the settlement, defendants will pay a non-reversionary gross settlement amount of $1,850,000, (see id. at ¶¶ 1.33, 7.4.), which will be used to pay eligible class members, settlement administration costs, taxes, attorney's fees and costs, and incentive awards for Gordley, Shaginyan, and Trefethen.  (See id. at ¶ 7.2.).  The settlement provides that lead counsel may apply for attorney's fees and costs, (see id. at ¶ 8.1), and the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") explains that lead counsel "intend to ask the Court to award them fees of up to 30% of the Settlement Amount," which would equate to $555,000, and costs not to exceed $40,000.  (Dkt. 77-2, Long Notice at 2); (see Dkt. 78-1, Memo. at 17) (same).  Also, the proposed claims administrator, Strategic Claims Services ("SCS"), shall be paid no more than $150,000 from the gross settlement amount.  (See Dkt. 77, Amended Settlement Agreement at ¶¶ 1.8, 3.3).  The remainder of the net settlement amount will be paid on a pro rata basis to all participating class members based on each authorized claimant's "recognized loss."  (See Dkt. 78-1, Memo. at 16, 18); (Dkt. 77-2, Long Notice at 8-10).

In the Motion, plaintiff seeks an order:  (1) provisionally certifying the proposed settlement class; (2) appointing lead plaintiff Gordley as class representative and lead counsel The Rosen Law Firm, P.A. as class counsel; (3) preliminarily approving the proposed settlement; (4) approving and ordering dissemination of the proposed class notice and forms; (5) scheduling a final approval hearing; and (6) appointing SCS as claims administrator.  (See Dkt. 78, Motion at 2); (Dkt. 78-1, Memo. at 16, 25).

---

[3] "Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time." (Dkt. 77, Amended Settlement Agreement at ¶ 1.34).

1          **LEGAL STANDARDS**

2    I.      CLASS CERTIFICATION.

3          At the preliminary approval stage, the court "may make either a preliminary determination

4    that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

5    as to the appropriateness of class certification."[4] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

6    *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

7    2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

8    117 S.Ct. 2231, 2248 (1997) ("Amchem")) ("Parties seeking class certification for settlement

9    purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").    In the

10   settlement context, a court must pay "undiluted, even heightened, attention" to the class

11   certification requirements.  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean

12   Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same). "Such

13   attention is of vital importance, for a court asked to certify a settlement class will lack the

14   opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as

15   they unfold."  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

16        A party seeking class certification must first demonstrate that:  "(1) the class is so numerous

17   that joinder of all members is impracticable; (2) there are questions of law or fact common to the

18   class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

19   of the class; and (4) the representative parties will fairly and adequately protect the interests of the

20   class."  Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand:

21   "numerosity, commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda

22   Motor Co., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean Wholesale

23   Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc) ("Olean

24   Wholesale").  In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet

25

26

27   _____

28        [4] All "Rule" references are to the Federal Rules of Civil Procedure.

at least one of the three requirements listed in Rule 23(b).[5]  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied. Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted).  A plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  Id. at 665.  However, Rule 23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where, by definition, there will be no trial."  In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc) ("In re Hyundai").

---

[5]  Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

II.     FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval.  See Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval."  Spann, 314 F.R.D. at 319; see also 4 Newberg on Class Actions § 13:10 (5th ed.) (Supp. 2021) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset.").  The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to the court to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2)"; and (2) "certify the class for purposes of judgment on the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2).");  4 Newberg on Class Actions § 13:10 (5th ed.) ("In 2018, Congress codified this

approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – i.e., that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement."  "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following:  (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "the proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

## DISCUSSION

I.    CLASS CERTIFICATION.

    A.    Rule 23(a) Requirements.

        1.    **Numerosity**.

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

determining factor, . . . where a class is large in numbers, joinder will usually be impracticable." A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks omitted); see Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]" Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

Here, the class is so numerous that joinder is impracticable. According to plaintiff, this is a typical securities fraud case involving nationally traded stocks where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large[.]" (Dkt. 78-1, Memo. at 5) (quoting Nguyen v. Radient Pharms. Corp., 287 F.R.D. 563, 569 (C.D. Cal. 2012)). Plaintiff estimates that there were approximately 2.51 million damaged shares of CD Projekt securities during the settlement class period. (See Dkt. 77-2, Long Notice at 2); (Dkt. 78-7, Exh. 5, Declaration of Adam Werner ("Werner Decl.) at ¶ 35). "The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year." In re Cooper Companies Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009).

### 2. **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589. Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations

share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at 588 (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of the litigation.  For example, common questions include whether:  (1) defendants' statements were false or misleading and whether such statements were material; (2) defendants acted with scienter; (3) the prices of CD Projekt securities were artificially inflated as a result of defendants' statements or omissions (and by how much); and (4) defendants' misleading statements or omissions caused the losses suffered by the proposed settlement class. (See Dkt. 78-1, Memo. at 6).  Under the circumstances, the court finds that plaintiff has satisfied the commonality requirement. See, e.g., Nguyen, 287 F.R.D. at 569 (finding commonality based in part on whether defendants "made statements to the investing public during the Class Period that misrepresented and/or omitted material facts[,]" "whether misstatements and omissions were made with the required scienter[,]" and "whether members of the Class sustained damages"); In re Zillow Grp., Inc. Sec. Litig., 2020 WL 6318692, *4 (W.D. Wash. 2020) ("Plaintiffs' allegations that investors were defrauded by the same misrepresentations over the same period of time and suffered similar losses as a result are sufficient to fulfill Rule 23's commonality requirement.").

1          3.      **Typicality**.

2          "Typicality refers to the nature of the claim or defense of the class representative, and not

3   to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657

4   F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).  To demonstrate typicality, class

5   representative's claims must be "reasonably co-extensive with those of absent class members[,]"

6   although "they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d

7   at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").  "The test

8   of typicality is whether other members have the same or similar injury, whether the action is based

9   on conduct which is not unique to the named plaintiffs, and whether other class members have

10  been injured by the same course of conduct."  Ellis, 657 F.3d at 984 (internal quotation marks

11  omitted).

12         Here, plaintiff's claims are typical of the claims of the class.  Gordley's claims arise from the

13  same nucleus of facts as those of the class and are based on the same legal theory, i.e., that

14  defendants violated the Securities Exchange Act and regulations issued under that Act by making

15  false and misleading statements that artificially inflated the price of CD Projekt securities.  (See

16  Dkt. 78-1, Memo. at 6); see, e.g., Tanne v. Autobytel, Inc., 226 F.R.D. 659, 667 (C.D. Cal. 2005)

17  ("Here, [lead plaintiff's] claims are typical because, just like other class members, he: (1)

18  purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be

19  artificially inflated by defendants' materially false and misleading statements and/or omissions, and

20  (3) suffered damage as a result."); Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal.

21  2012) (typicality requirement satisfied where plaintiff's claims were based on "the same event or

22  practice or course of conduct that [gave] rise to the claims of other class members and . . . are

23  based on the same legal theory") (internal quotation marks omitted).  Additionally, the court is not

24  aware of any facts that would subject the proposed class representative "to unique defenses which

25  threaten to become the focus of the litigation."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508

26  (9th Cir. 1992) (internal quotation marks omitted); (see Dkt. 78-1, Memo. at 7) ("There is no

27  indication that Plaintiffs' claims are atypical of those of the Settlement Class, or that a unique

28  defense applies to Plaintiffs' claims.").  In short, plaintiff has satisfied the typicality requirement.

4. **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

Here, the proposed class representative has no individual claims separate from the class claims, (see, generally, Dkt. 43, Consolidated Complaint), and does not appear to have any conflicts of interest with the absent class members. (See Dkt. 78-1, Memo. at 7); see, e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class."). Thus, "[t]he adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests as the absent Class Members[.]" Barbosa, 297 F.R.D. at 442.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251. Here, the Amended Settlement Agreement provides that the court appoint The Rosen Law Firm, P.A. as class counsel. (See Dkt. 77, Amended Settlement Agreement at ¶ 1.17). Having reviewed the declaration and firm resume filed by proposed class counsel, (see Dkt. 78-2, Declaration of Laurence Rosen [] at ¶ 3); (Dkt. 78-6, Exh. 4, Firm Resume), the court finds that counsel are competent, and there are no issues as to the adequacy of representation. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.     Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). The rule requires two different inquiries, specifically a determination as to whether:   (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

1.     **Predominance**.

"[T]he general rule [is] that predominance is easier to satisfy in the settlement context." Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020). "To determine whether a class satisfies the [predominance] requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." Id. at 1005. "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). "If a common question will drive the resolution [of the litigation], even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah, 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (internal quotation marks omitted) (brackets in original). Finally, the class damages must be sufficiently traceable to plaintiff's liability case. See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

For the reasons discussed above, see supra at § I.A.2., the court is persuaded that common questions predominate over individual questions. See Tyson Foods, Inc. v. Bouaphakeo,

577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted); Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 938 (9th Cir. 2019) ("[P]redominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer.") (internal quotation marks omitted). Indeed, the single, overwhelming common question of whether defendants violated the Securities Exchange Act and associated regulations by making misrepresentations about CD Projekt's Cyberpunk game predominates over any individual questions. See, e.g., Amchem, 521 U.S. at 625, 117 S.Ct. at 2250 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); Hefler v. Wells Fargo & Co., 2018 WL 4207245, *4 (N.D. Cal. 2018) ("Whether Defendants' statements were false, material, made with the requisite scienter, and caused the class members' losses are significant aspects of the case and susceptible to common proof."); In re Extreme Networks, Inc. Sec. Litig., 2019 WL 3290770, *5 (N.D. Cal. 2019) (finding predominance where "[t]he common questions in this case which would be subject to common proof include whether Defendants misrepresented material facts or omitted material facts for publicly traded stocks in violation of the law, whether Defendants had a duty to disclose alleged material omissions or acted with scienter, and whether the market price of Extreme's common stock during the class period was artificially inflated due to the alleged material omissions and/or misrepresentations"). Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case. See Comcast, 569 U.S. at 35, 133 S.Ct. at 1433. In short, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022.

        2.   **Superiority**.

     "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and

1  "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

2  Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

3  superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

4          The first factor considers "the class members' interests in individually controlling the

5  prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

6  against class certification where each class member has suffered sizeable damages or has an

7  emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, Gordley does not assert

8  claims for emotional distress, nor is there any indication that the amount of damages any individual

9  class member could recover is significant or substantially greater than the potential recovery of

10  any other class member.  (See, generally, Dkt. 43, Corrected Complaint).  The alternative method

11  of resolution – pursuing individual claims for a relatively modest amount of damages – would likely

12  never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023;

13  see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of

14  the putative class members' potential individual monetary recovery, class certification may be the

15  only feasible means for them to adjudicate their claims.  Thus, class certification is also the

16  superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D.

17  Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the

18  superior, but the only manner in which to ensure fair and efficient adjudication of the present

19  action."); In re VeriSign, Inc. Sec. Litig., 2005 WL 7877645, *9 (N.D. Cal. 2005) ("Class actions are

20  particularly well-suited in the context of securities litigation, wherein geographically dispersed

21  shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy

22  corporate defendants.").  In short, "there is no evidence that Class members have any interest in

23  controlling prosecution of their claims separately nor would they likely have the resources to do

24  so."  Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

25          The second factor is "the extent and nature of any litigation concerning the controversy

26  already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class

27  member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P.

28  23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling

14

1  their own litigation[.]"  2 <u>Newberg on Class Actions</u> § 4:70 (5th ed.) (emphasis omitted).  Here,

2  there is no indication that any class member is involved in any other litigation concerning the

3  claims in this case.  (<u>See</u>, <u>generally</u>, Dkt. 78-1, Memo.); <u>see</u> <u>Barbosa</u>, 297 F.R.D. at 444 ("The

4  Court does not have any information that litigation concerning this controversy is currently being

5  pursued by or against the class members; thus, this factor is neutral.").

6           The third factor is "the desirability or undesirability of concentrating the litigation of the

7  claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class

8  action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the

9  third and fourth factors are rendered moot and are irrelevant."  <u>Barbosa</u>, 297 F.R.D. at 444;  <u>see</u>

10 <u>Amchem</u>, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class

11 certification, a district court need not inquire whether the case, if tried, would present intractable

12 management problems, . . . for the proposal is that there be no trial.") (citation omitted); <u>In re</u>

13 <u>Hyundai</u>, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation

14 classes and settlement classes.  In deciding whether to certify a litigation class, a district court

15 must be concerned with manageability at trial.  However, such manageability is not a concern in

16 certifying a settlement class where, by definition, there will be no trial.").

17          The only factors in play here weigh in favor of class treatment.  Further, the filing of

18 separate suits by potentially thousands of other class members "would create an unnecessary

19 burden on judicial resources."  <u>Barbosa</u>, 297 F.R.D. at 445.  Under the circumstances, the court

20 finds that the superiority requirement is satisfied.

21 II.     FAIRNESS,   REASONABLENESS,   AND   ADEQUACY   OF   THE   PROPOSED

22          SETTLEMENT.

23          A.     <u>The Settlement is the Product of Arm's-Length Negotiations</u>.

24          Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

25 negotiated at arm's length.  Here, "[t]he negotiations between Lead Counsel and Defendants'

26 counsel that produced the Settlement were serious and informed."  (Dkt. 78-1, Memo. at 13).

27 Plaintiff filed the amended Consolidated Complaint (Dkt. 43) after having "conducted a thorough

28 review of CD Projekt's securities filings and publicly available information concerning the

1  Company[.]" (Dkt. 78-1, Memo. at 13).  Plaintiff also "retain[ed] an investigator to interview former

2  CD Projekt employees" and "a damages expert to evaluate the case[.]" (Id. at 7); (see id. at 20)

3  (same).    Lead counsel then reviewed and opposed Defendants' motion to dismiss the

4  Consolidated Complaint.   (See Dkt. 51, Memorandum [] in Opposition to Motion to Dismiss).

5  According to lead counsel, they and plaintiff "acquired fulsome understandings of the parties'

6  respective positions on the legal and factual issues in the case" through the motion to dismiss

7  briefing and settlement negotiations.   (See Dkt. 78-1, Memo. at 13) (internal quotation marks

8  omitted).

9  　　　　Based on the evidence and record before the court, the court is persuaded that the parties

10  thoroughly investigated and considered their own and the opposing parties' positions.  The parties

11  had a sound basis for measuring the terms of the settlement against the risks of continued

12  litigation, and there is no evidence that the settlement is the product of fraud or overreaching by,

13  or collusion between, the negotiating parties.   See Spann, 314 F.R.D. at 323-25 (finding no

14  evidence that a class action settlement was the product of fraud or collusion between the parties);

15  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class

16  action settlement where there was "no evidence of fraud, overreaching, or collusion").

17  　　　　B.   　The Amount Offered in Settlement Falls Within a Range of Possible Judicial

18  　　　　　　　Approval and is a Fair and Reasonable Outcome for Class Members.

19  　　　　　　　1.   **Recovery for Class Members.**

20  　　　　As noted above, class members will share in a non-reversionary gross settlement amount

21  of $1,850,000.   (See Dkt. 77, Settlement at ¶¶ 1.33, 7.4.).   Plaintiff's damages consultant

22  estimates that total potential damages were $11 million. (See Dkt. 78-1, Memo. at 19) (referring

23  to "the maximum estimated damages of $11 million under Plaintiff's best-case scenario, as

24  estimated by Plaintiff's damages expert using a two trader model").[6]  Thus, according to plaintiff,

25

26  　　　　[6]  In a declaration accompanying the Motion, plaintiff's damages consultant appears to suggest
that the maximum damages estimate is lower, stating that "total damages suffered by CD Projekt
27  ADR investors were $8.4 million[.]"  (Dkt. 78-7, Werner Decl. at ¶ 35).  In any event, a lower
maximum damages estimate would mean that the settlement yields a greater recovery for class
28  members, and thus it would not alter the court's analysis here.

the settlement represents 16.8% of the settlement class's estimated recoverable damages. (See id.).  This amount appears to be in line with the median recovery in comparable cases.  (See id. at 19-20) (citing Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements: 2020 Review and Analysis, Cornerstone Research, at p. 6 & 18 (2020), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis).

The  settlement amount in this case will result in compensation of approximately $0.49 per eligible share of CD Projekt securities.[7]  (See Dkt. 77-2, Long Notice at 2).  Plaintiff contends that the settlement amount is fair and reasonable given the substantial litigation risks.  (See Dkt. 78-1, Memo. at 13-16).  In particular, plaintiff faces the risk of failing to prove loss causation, i.e., failing to prove that defendants' fraudulent conduct was the reason CD Projekt's stock price became artificially inflated, and that exposure of defendants' scheme, rather than other factors, caused the stock price to drop.  (See id. at 14-15); see, e.g., In re Celera Corp. Sec. Litig., 2015 WL 1482303, *5 (N.D. Cal. 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial.").  Plaintiff also notes that conducting discovery in Poland would have been difficult, (see Dkt. 78-1, Memo. at 15), and that because "defendants are all located abroad in Poland and, had [he] achieved a favorable result at trial, [he] would nonetheless face significant hurdles and expenses enforcing any judgment abroad."  (Id. at 19).

Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks and the costs, risks, and delay of trial and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court deciding whether to grant preliminary approval  includes, among other things:  (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information

---

[7]  According to the Long Notice, "[t]he Settlement represents an estimated average recovery, after deduction of attorneys' fees and expenses approved by the Court," although each claimant's "actual recovery will depend on the aggregate losses of all Settlement Class Members, the date(s) [the claimant] purchased and sold CD Projekt securities, and the total number of claims filed." (Dkt. 77-2, Long Notice at 2).

1  about the likely range of litigated outcomes, and about the risks that might attend full litigation").

2  Here, given the significant risks of litigation coupled with the delays associated with continued

3  litigation, the court is persuaded that the benefits to the class fall within the range of

4  reasonableness.  See, e.g., Vataj v. Johnson, 2021 WL 5161927, *6 (N.D. Cal. 2021) (finding that

5  $10 million settlement that represented "2% aggregate recovery [was] consistent with the 2–3%

6  average recovery that the parties identified in other securities class action settlements"); In re Uber

7  FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement

8  that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship,

9  151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a

10  fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

11  grossly inadequate and should be disapproved.") (internal quotation marks omitted).

12          2.  **Release of Claims**.

13        The court must also consider whether the settlement contains an overly broad release of

14  liability.  See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement,

15  courts [have] rejected preliminary approval when the proposed settlement contain[s] obvious

16  substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus

17  Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed

18  settlement that provided defendant a "nationwide blanket release" in exchange for payment "only

19  on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to

20  the class).  Here, class members who do not exclude themselves from the settlement will release

21                  any and all Claims that have been or could have been asserted in the Action

22                  by or on behalf of any of the Releasing Parties, in any capacity, arising out

23                  of or relating to the allegations, facts, transactions, events, matters,

24                  occurrences, acts, disclosures, oral or written statements, representations,

25                  omissions, failures to act, filings, publications, disseminations, press

26                  releases, or presentations involved, related to, set forth, alleged or referred

27                  to in the Action.

28

(Dkt. 77, Amended Settlement Agreement at ¶ 1.29).  The Release also contains a limited waiver of rights under California Civil Code § 1542 and similar statutes; it is limited to claims "arising out of or relating to the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions . . . involved, related to, set forth, alleged or referred to in the Action."  (Id. at ¶¶ 1.29 & 6.2); (see also Dkt. 78-1, Memo. at 24).

With the understanding that, under the Release, the settlement class members are not giving up any claims unrelated to those asserted in this action, the court finds that the Release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation with finality.  See Hess v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted); Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.   The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other."  The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance Litig., 2022 WL 4492089, *11 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest.  See id. at 1165.  "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which

1  the class has benefitted from those actions, and the amount of time and effort the plaintiff
2  expended in pursuing the litigation."  Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

3          Here, class counsel have indicated that they may request an incentive award for Gordley,
4  Shaginyan, and Trefethen of no more than $7,500.  (See Dkt. 78-1, Memo. at 23); (Dkt. 77-2, Long
5  Notice at 2).  Although each appears to have been diligent in litigating the case, (see Dkt. Dkt. 78-
6  3, Declaration of James Gordley at ¶¶ 6, 10, 12-14); (Dkt. 78-4, Declaration of Steven Shaginyan
7  at ¶¶ 6, 10, 12-14); (Dkt. 78-5, Declaration of Phillip Trefethen at ¶¶ 6, 10, 12-14), the court
8  believes that a $7,500 service payment is excessive.  Under the circumstances, the court
9  tentatively finds that an incentive payment of no more than $5,000 is appropriate.  See Dyer v.
10  Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of
11  $5,000 presumptively reasonable).  Further, the court is not inclined to award an incentive
12  payment to Shaginyan and Trefethen because they did not seek appointment as class
13  representatives in this matter, absent authority that would support an award under these
14  circumstances.

15          D.    Class Notice and Notification Procedures.

16          Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner
17  to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule
18  23(c)(2) requires the "best notice that is practicable under the circumstances, including individual
19  notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements
20  for classes certified under Rule 23(b)(3)).

21          "The standard for the adequacy of a settlement notice in a class action under either the Due
22  Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v.
23  Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117
24  (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action
25  proceedings is one of reasonableness.") (internal quotation marks omitted).  A class action
26  settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient
27  detail to alert those with adverse viewpoints to investigate and to come forward and be heard."
28  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks

omitted); see Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]") (internal quotation marks omitted). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class. See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also imposes notice requirements. See 15 U.S.C. § 78u-4(a)(7). "Under the PSLRA, any proposed final settlement agreement 'shall include each of the following statements, along with a cover page summarizing the information contained in such statements:' a statement of plaintiff recovery, a statement of potential outcomes of the case, a statement on attorneys' fees or costs, identification of lawyers' representatives, reasons for the settlement, other information as required by the court." Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, *8 (C.D. Cal. 2019) (quoting 15 U.S.C. § 78u-4(a)(7)).

Here, the Long Notice describes the nature of the action and the claims alleged. (See Dkt. 77-2, Long Notice at 3 & 5-6); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). It provides the definition of the class, (see Dkt. 77-2, Long Notice at 2 & 6); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release, as well as the proposed attorney's fees and expenses. (See Dkt. 77-2, Long Notice at 7-18). The Long Notice includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant. (See id. at 3 & 17-20); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi). Finally, the Notice explains the procedures for objecting to the settlement

1   and provides information about the Final Fairness Hearing.  (See Dkt. 77-2, Long Notice at 3, 18-

2   20).

3        SCS, who plaintiff seeks to have appointed as settlement administrator, (see Dkt. 78-1,

4   Memo. at 16); (see also Dkt. 78-8, Declaration of Paul Mulholland Regarding Notice Plan

5   ("Mulholland Decl.")), will send notice by email or, if no email address can be obtained, by mail to

6   all class members who can be identified by reasonable effort, as well as approximately 2,500

7   brokerage firms and other third parties who regularly act as nominees for beneficial purchasers

8   of securities.[8]  (See Dkt. 78-8, Mulholland Decl. at ¶¶ 4 & 8-9); (Dkt. 78-1, Memo. at 21).  The

9   notice will direct class members and nominees to a settlement website maintained by SCS that

10   provides copies of the Long Notice, proof of claim and release form ("Claim Form"), and exclusion

11   request form, as well as other information about the settlement and claim submission process.

12   (See Dkt. 78-8, Mulholland Decl. at ¶¶ 4, 9 & 12-13); (Dkt. 77-2, Long Notice at 7 & 16-18); (Dkt.

13   78-1, Memo. at 21); (see also Dkt. 77-3, Claim Form); (Dkt. 77-6, Request for Exclusion Form).

14   SCS will also publish a summary notice in GlobeNewswire and Investor's Business Daily, (see

15   Dkt. 78-8, Mulholland Decl. at ¶¶ 4 & 11), and maintain a toll-free number for class members to

16   inquire about the settlement.  (See id. at ¶¶ 12 & 15).

17        Based on the foregoing, the court finds there is no alternative method of distribution that

18   would be more practicable here, or any more reasonably likely to notify the class members.  In

19   addition, the court finds that the procedure for providing notice and the content of the class notice

20   constitute the best practicable notice to class members and comply with the requirements of due

21   process.

22        E.   Summary.

23        The court's preliminary evaluation of the Amended Settlement Agreement does not disclose

24   grounds to doubt its fairness "such as unduly preferential treatment of class representatives or

25

26   _____

27       [8]  In SCS's experience, "class members who hold their securities in their own name, . . . make
     up less than 2% of a class in a typical securities settlement[,]" (Dkt. 78-8, Mulholland Decl. at ¶
28   6), and "the majority of potential class members as the beneficial owner are reached through the
     nominees."  (Id. at ¶ 7).

segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys[.]" Manual for Complex Litigation § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

### **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Motion for Preliminary Approval of Class Action Settlement **(Document No. 78)** is **granted** upon the terms and conditions set forth in this Order.

2.  The court preliminarily certifies the class, as defined in ¶ 1.34 of the Amended Settlement Agreement (Dkt. 77), for the purposes of settlement.

3.  The court preliminarily appoints plaintiff James Gordley as class representative for settlement purposes.

4.  The court preliminarily appoints The Rosen Law Firm, P.A. as class counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The court approves the form, substance, and requirements of the Long Notice.  (See Dkt. 77-2).  The proposed manner of notice of the settlement set forth in the Amended Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  The court appoints Strategic Claims Services ("SCS") as settlement administrator.  SCS shall complete dissemination of class notice, in accordance with the Amended Settlement Agreement the proposed notice plan, no later than **February 6, 2023**.

8.  Plaintiff shall file a motion for attorney's fees and costs, as well as any incentive payment(s), no later than **March 8, 2023,** and notice it for hearing for the date of the final approval hearing set forth below.

9.  Any class member who wishes to either (a) object to the settlement, including the requested attorney's fees, costs and incentive awards, or (b) exclude him or herself from the

settlement, must file his or her objection to the settlement or request exclusion no later than **April 7, 2023**, in accordance with the Long Notice and this Order.

10.   Lead plaintiff shall, no later than **April 21, 2023,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.   Defendants may file and serve a memorandum in support of final approval of the Amended Settlement Agreement and/or in response to objections no later than **April 28, 2023.**

12.   Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **April 28, 2023**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.   A final approval (fairness) hearing is hereby set for **June 1, 2023,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Amended Settlement Agreement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the named plaintiff.

14.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Amended Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 3rd day of January, 2023.

/s/

Fernando M. Olguin
United States District Judge