# EXHIBIT A

Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and
the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TRAMPE, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>CD PROJEKT S.A., ADAM MICHAL KICIŃSKI, MARCIN IWIŃSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI,<br><br>     Defendants. | Case No. CV 20-11627 FMO (RAOx)<br><br>**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS**<br><br>JURY TRIAL DEMANDED<br>Date: June 1, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

---

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     OVERVIEW OF THE LITIGATION .........................................................2

   A.    Plaintiff's Allegations .........................................................................2

   B.    Procedural History and Settlement........................................................3

I.      THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND.........................................................................4

   A.    Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class......................................................4

   B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund ...........................................................................5

   C.    The Requested Attorneys' Fees are Reasonable and Merited .............6

     1.    Plaintiffs' Counsel Achieved a Fair, Reasonable, and Adequate Result for the Settlement Class................................................6

     2.    The Risks and Complexity of the Litigation Support the Requested Fee Amount...................................................................8

     3.    Lead Counsel Skillfully Managed This Case Against Formidable Adversaries ...............................................................9

     4.    Plaintiffs' Counsel Undertook a Significant Financial Risk.............11

     5.    Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund.....................................................12

     6.    An Informal Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee Award...................................................14

     7.    The Settlement Class's Reaction Supports the Requested Fee.........16

II.     PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.................18

i

**III.   THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS** ............................................................................................**19**

**IV.   CONCLUSION**.........................................................................................**22**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009)............................................................................8

*Atlas v. Accredited Home Lenders Holding Co.*,
   No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)..........6

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ...................................................................13

*Blum v. Stenson*,
   465 U.S. 886 (1984).......................................................................................5

*Boyd v. Bank of Am. Corp.*,
   No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014).........13

*Brown v. China Integrated Energy Inc.*,
   No. CV1102559BROPLAX, 2016 WL 11757878 (C.D. Cal. July 22, 2016) ....20

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)...10

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................17

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......12

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ......................................................................................9

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014).....................................................................20

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ........................................................................2

iii

*Feller v. Transamerica Life Ins. Co.*,
No. 16CV01378CASGJSX, 2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .........16

*Fleming v. Impax Lab'ys Inc.*,
No. 16-CV-06557-HSG, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021)............21

*Fleming v. Impax Lab'ys Inc.*,
No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022)............21

*Fox v. Vice*,
563 U.S. 826 (2011) ...................................................................................15

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ...............................................................6

*Gustafson v. Valley Ins. Co.*, No. CV,
01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004)......................................14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
No. 13-317.............................................................................................4

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)........................................................................18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................6

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
No. 2:19-CV-07748-CAS (PLAx), 2022 WL 826903 (C.D. Cal. Mar. 14, 2022)
...............................................................................................................15

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ...............16

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ...........................................................5

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)..................................... 10, 12, 14

iv

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012).........15

*In re Audioeye, Inc., Sec. Litig.*,
No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8, 2017).......13

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ...................................................................9

*In re Brooktree Sec. Litig.*,
915 F. Supp. 193 (S.D. Cal. 1996)........................................................................5

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2021 WL 5369815 (D. Kan. Nov. 17, 2021) ..............................................21, 22

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
No. 17-MD-2785-DDC-TJJ, 2021 WL 5369798 (D. Kan. Nov. 17, 2021) ........21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............8

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................7, 8

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) .................................................8, 11

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)......... passim

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) .............................................................................6

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..........................................................17, 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

*In re IsoRay, Inc. Sec. Litig.*,
  No. 4:15-CV-5046-LRS, 2017 WL 11461073 (E.D. Wash. Mar. 7, 2017) ........12

*In re LJ Int'l, Inc. Sec. Litig.*,
  No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) .......9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)..................................................................................12

*In re Nuvelo, Inc. Sec. Litig.*,
  No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) .................13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ passim

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)................................................................................8, 12

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)....................................................................................6

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) .........................................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013).......................22

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act*
  *(FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ..........................................................................19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007).......................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...............15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)........................................................................ passim

vi

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............7

*Jenson, v. First Tr. Corp.*,
2008 WL 11338161 (C.D. Cal. June 9, 2008) ................................................19, 20

*Johnson v. US Auto Parts Network, Inc.*,
No. CV07-2030-GW(JCX), 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)..........8

*Katz v. China Century Dragon Media, Inc.*,
2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)..............................................14, 18

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................10

*Lopez v. Youngblood*,
No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011).............5

*Luna v. Marvell* Tech. Grp.,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ......................................................18

*Mauss v. NuVasive, Inc.*,
No. 13CV2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ............13

*McPhail v. First Command Fin. Plan., Inc.*,
No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009).................7

*Millan v. Cascade Water Servs., Inc.*,
No. 112CV01821AWIEPG, 2016 WL 3077710 (E.D. Cal. May 31, 2016) .......13

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003)..........................................................................13

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................18

*Pace v. Quintanilla*,
No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014).........10

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ...............................................................15

*Patel v. Axesstel, Inc.*,
   No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015)...13

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)..................................................................................4

*Rausch v. Hartford Fin. Servs. Grp.*,
   No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007)........................14

*Razilov v. Nationwide Mut. Ins. Co.*,
   No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006)......................20

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013).........8

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...........................................................................11

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ..............12

*Romero, et al., v. Growlife, Inc., et al.*,
   Case No. 2:14-cv-03015-CAS-JEM ....................................................................13

*Sanders v. The RealReal, Inc.*,
   No. 5:19-cv-773-EJD (N.D. Cal. July. 28, 2022) ...............................................16

*Sawant v. Ramsey*,
   No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012)................11

*Singer v. Becton Dickinson & Co.*,
   No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)........13

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ...............................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ...............................................................16

*Szymborski v. Ormat Techs., Inc.*,
   No. 3:10-CV-132-RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012)..................13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ....................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012)........................................................................5

*Vandervort v. Balboa Cap. Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...........................................................13

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977)........................................................................4

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)..........10

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................... 5, 6, 8, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................5

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...................................................................................19

15 U.S.C. § 78u-4(a)(6) .....................................................................................5

**Other Authorities**

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995)................................19

ix

Lead Plaintiff James W. Gordley, and additional plaintiffs Steven Shaginyan and Phillip Trefethen ("Plaintiffs") submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs.[1]

## I.    INTRODUCTION

The Parties reached a Settlement to resolve this Action for $1,850,000. Stipulation ¶1.33.  The Settlement is a favorable result for the Settlement Class, recovering approximately 16.8% of the maximum damages of $11.02 million, as estimated by Plaintiffs' damages expert. Having achieved this substantial recovery for the Settlement Class despite facing significant obstacles and risks, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, or $462,500, and an Award to Plaintiffs of $5,000 each, or $15,000 total, paid from the Settlement Fund.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The main factors courts consider in setting the award are the quality of the result, the risk undertaken, and the reaction of the settlement class. Courts also cross-check the award against the time and effort counsel expended. Here, each of these factors weighs in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The Parties reached the Settlement after informed, arm's-length negotiations. This Settlement is a favorable result for Settlement Class Members in light of several obstacles Plaintiffs faced, including Defendants' motions to

---

[1] All capitalized terms not otherwise defined shall have the same meanings as in the Stipulation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

dismiss, availability of evidence, Defendants' potential defenses, risks of prosecuting this litigation through trial, and challenges of litigating a case and collecting a judgment against foreign defendants.

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes several procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks entailed in this litigation, Lead Counsel was able to secure a favorable and prompt recovery for the Settlement Class.

The Settlement Class approves of Lead Counsel's work. Objections are not due until April 7, 2023, but to date no Settlement Class Member objected to the Settlement or the fee request, as previewed in the notice sent to potential Settlement Class Members. There have been no valid requests for exclusion.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with this action in the amount of $26,267.41. These expenses, including court filings fees, expert fees, investigator fees, travel expenses, and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

Finally, Plaintiffs seek an award of $5,000 each, or $15,000 total, for their time spent in carrying out their obligations in the Action. This request is reasonable in light of the time Plaintiffs spent in connection with this Action on behalf of the Settlement Class and is in line with awards granted in similar actions.

## II.    OVERVIEW OF THE LITIGATION

### A.    Plaintiff's Allegations

CD Projekt, SA is a Polish video game developer. As a small developer, CD Projekt competes with larger developers by focusing almost all of its efforts on one game at a time, releasing a new title once every several years. From 2015 to 2020,

that game was Cyberpunk 2077. Beginning in January of 2020 CD Projekt assured the public that Cyberpunk 2077 was a complete and playable game and was pending final refinements before release on multiple platforms, including the highly popular PlayStation 4 and Xbox One gaming consoles. Throughout 2020, CD Projekt assured investors that it had essentially completed versions of the game for those two consoles. In reality, the games were virtually unplayable on the PlayStation 4 and Xbox One consoles. Having delayed the game several times however, CD Projekt's executives were determined to release the game in 2020 and reap the financial rewards, whether or not the game was actually finished. CD Projekt attempted to conceal the fact that the Sony PlayStation 4 and Microsoft Xbox One games did not work until the last moment by refusing to provide advance copies of those versions of the game to reviewers. However, when CD Projekt released the game, the problems became immediately obvious, with fans expressing their outrage on the internet and demanding refunds. As a result CD Projekt's price declined by more than 25%, harming investors.

### B.    Procedural History and Settlement

Two putative securities class actions were filed on December 24, 2020 and January 14, 2021, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). On May 14, 2021, the Court consolidated the actions and appointed James Gordley as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Dkt. No. 38. On June 28, 2021 Plaintiffs filed the Consolidated Amended Complaint. Dkt. No. 41. On August 12, 2021 Defendants filed their motion to dismiss. Dkt. No. 48. Plaintiffs filed their opposition on October 4, 2021. Dkt. Nol. 51. Defendants filed their reply on November 17, 2021. Dkt No. 55. Shortly thereafter, the parties began to negotiate a settlement and on November 29, informed the Court that they had reached a settlement in principle. Dkt. No. 57. Plaintiffs filed a Motion for Preliminary Approval on January 27, 2022. Dkt. No. 61. On April 7, 2022, the Court directed

the parties to amend the settlement agreement to address certain issues and for Plaintiffs to provide supplemental information for the Court in assessing preliminary approval. Dkt. No. 72. On April 28, 2022, Plaintiffs submitted a renewed Motion for Preliminary Approval, Dkt. No. 78, which the court granted on January 3, 2023.

## I.  THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND

### A.  Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and an award is necessary and appropriate here for the same reasons.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

### B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund

Under the "common fund doctrine" a reasonable fee may be based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the percentage-of-the-fund method or the "lodestar/multiplier" method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). The percentage method also preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Class from the delays necessitated by the Court's review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset*

*Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 (using lodestar as "a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

### C.    The Requested Attorneys' Fees are Reasonable and Merited

Factors that courts use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino*, 290 F.3d at 1047; *Omnivision*, 559 F. Supp. 2d at 1046. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding Lead Counsel attorneys' fees of 25% of the Settlement Fund.

### 1.    Plaintiffs' Counsel Achieved a Fair, Reasonable, and Adequate Result for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (finding the "most critical factor is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery").

The Settlement value, totaling $1,850,000 plus interest, constitutes approximately 16.8% of Plaintiffs' maximum estimated damages of $11.02 million.[2] This is a highly favorable result, particularly in light of the considerable risks of litigation presented here. As a percentage of the total estimated damages, the Settlement Amount is well-above the percentage of investor losses recovered in typical securities class action settlements. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Plan., Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

According to Cornerstone Research, approximately 36% of securities class actions settled for less than $5 million in 2021, with roughly 1 out of 6 cases settling for less than $2 million.[3] The median recovery in cases such as this one

---

[2] This figure includes both the estimated damages for CD Projekt ADRs and CD Projekt "F Shares" that sold in the United States on the OTC. Dkt No. 78-7 at ¶¶ 30, 35.

[3] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2021 Review and Analysis (Cornerstone Research), at 4, 6, and 14 *available* at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

alleging Rule 10b-5 claims with damages under $25 million was approximately 12.5% of estimated damages in 2021, and 18.2% between 2012-2020. *Id.* Between 2017-2021, securities class actions that settled before motions to dismiss were filed recovered a median of $3 million and 9.8% of estimated damages. *Id.* The recovery here compares favorably to recoveries in similar securities class action settlements, supporting the requested fee.

### 2. The Risks and Complexity of the Litigation Support the Requested Fee Amount

The risks and complexity of the litigation are important factors in determining a fee award. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees were justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance"); *WPPSS*, 19 F.3d at 1299-1301.

Securities class actions are often complex, difficult to prove, and risky. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)); *Johnson v. US Auto Parts Network, Inc.*, No. CV07-2030-GW(JCX), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) ("a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action."). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

Plaintiffs faced significant legal and practical risks if litigation were to continue. Plaintiffs' claims were subject to the PSLRA's stringent pleading standards. As a court observed in dismissing securities claims brought against BP following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). "Legal precedents are continually making it more difficult to plead securities class actions," so courts have awarded higher fees in securities actions. *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016). Defendants' motion to dismiss asserted challenges to falsity, the scienter of the Defendants, and loss causation, as well as the Court's personal jurisdiction over the Defendants, that the claims were allegedly impermissibly extraterritorial, and on *forum non conveniens* grounds. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). Under the PSLRA, the element of scienter is particularly difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Plaintiffs also faced significant risks of continued litigation beyond the pleading stage, such as obtaining class certification, conducting lengthy and expensive fact and expert discovery, surviving Defendants' anticipated motion for summary judgment, winning at trial, and defeating any post-trial motions or appeals. These difficulties would be exacerbated by the fact that many documents relevant to the case would undoubtedly be in Polish.

### 3.   Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support the requested fee award. "The prosecution and management of a complex

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (similar).

The Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), has amassed the skills and experience needed to prosecute this case through its considerable experience litigating. Declaration of Jonathan Stern ("Stern Decl.") ¶10, Exhibit 1 (Rosen Law Firm resume). They have shown they are willing and able to litigate a case to resolution. *See, e.g., Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement). Rosen Law applied the same skill, experience, and determination in litigating this Action to a favorable resolution for the Settlement Class.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20. Here, Defendants retained Cooley, LLP, one of the world's premier law firms. Defense Counsel are talented and experienced securities practitioners who

10

advocated forcefully for their clients. That Lead Counsel achieved a favorable Settlement in the face of such formidable opposition weighs in favor of the requested fee.

### 4. Plaintiffs' Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Contingency fee risk is not illusory. In many cases, plaintiffs' attorneys invest thousands of hours and receive no remuneration whatsoever. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Since the PSLRA was enacted, a high percentage of securities cases have been dismissed at the pleading stage. The risks do not end at the motion to dismiss stage. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). For example, in *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

The risks here were no different. Plaintiffs' Counsel's fee was entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. Plaintiffs' risked non-payment collectively of 280.6 hours of professional time worth $243,532.50, as well as incurring expenses of $26,267.41, for two years to bring this case to a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

successful conclusion. Stern Decl. ¶¶7-8. "This type of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *Am. Apparel*, 2014 WL 10212865, at *22; *see also City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

### 5. Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund

The Ninth Circuit has established a benchmark for attorneys' fees in common fund cases of 25%, which the Court may adjust upwards or downwards for special circumstances. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee of one-third of settlement fund); *Heritage Bond*, 2005 WL 1594403, at *18 (awarding one-third of settlement amount). Courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark."); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Here, Lead Counsel requests an award of attorneys' fees of 25% of the Settlement Amount.

Courts in the Ninth Circuit frequently award fees at or above the 25% benchmark in connection with securities class action settlements under $10 million, like the Settlement here. *E.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of $1.725 million settlement); *In re IsoRay, Inc. Sec. Litig.*, No. 4:15-CV-5046-LRS, 2017 WL

11461073, at *1 (E.D. Wash. Mar. 7, 2017) (awarding attorneys' fees of 30% of $3,537,500 settlement); *Szymborski v. Ormat Techs., Inc.*, No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *4 (D. Nev. Oct. 16, 2012) (awarding attorneys' fees of 30% of $3,100,000 settlement); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding attorneys' fees of 30% of $1.25 million settlement). Moreover, Courts in this District have approved similar fee requests of 25% of a cash component of a settlement and 25% of a stock component. *See Romero, et al., v. Growlife, Inc., et al.*, Case No. 2:14-cv-03015-CAS-JEM (Dkt. No. 57).

Courts in the Ninth Circuit also routinely award attorneys' fees at or above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding one-third fee); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% fee); *Millan v. Cascade Water Servs., Inc.*, No. 112CV01821AWIEPG, 2016 WL 3077710, at *11–12 (E.D. Cal. May 31, 2016) (approving an award of 33% of the common fund); *Barbosa v. Cargill Meat Sols.*

*Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund); *Rausch v. Hartford Fin. Servs. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *2 (D. Or. Feb. 26, 2007) (awarding 30% of settlement fund); *Gustafson v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004) (same).

The requested benchmark 25% fee is also lower than contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery.").

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the unique risks avoided in achieving a prompt and substantial recovery, the contingent fee risk, and the fees awarded in similar securities class actions in this Circuit, an award at the benchmark of 25% of the Settlement Amount obtained for the Settlement Class is reasonable. *See* Preliminary Approval Order at 8 ("The record presents no reason to depart from the benchmark in this case.").

### 6. An Informal Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee Award

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at *20; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's

14

[lodestar] figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage Bond*, 2005 WL 1594403, at *22.

When using the lodestar to calculate fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, an informal lodestar cross-check on the percentage requested further supports the reasonableness of the requested fee.

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Rosen Law's hourly rates for attorneys who worked on this case range from $875 to $1075 for partners in 2023, and $550 to $625 for associates. Stern Decl., ¶6. These rates are consistent with those of other attorneys engaged in similar litigation in this District and comparable jurisdictions. *See, e.g., Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, No. 2:19-CV-07748-CAS (PLAx), 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check with "billing rates ranging from $275 to $1600 for partners, $150 to $790 for

associates, and $80 to $490 for paralegals"). Courts in this Circuit have also previously awarded fees to Rosen Law based on substantially the same rates. *E.g., Sanders v. The RealReal, Inc.*, No. 5:19-cv-773-EJD (N.D. Cal. July. 28, 2022), Dkt. Nos. 71-3 (declaration setting forth hourly rates for Rosen Law attorneys) and 76 (order awarding fees).

Here, Plaintiffs' Counsel dedicated 280.6 hours of professional time prosecuting this litigation from its inception. Stern Decl. ¶7. In addition to the time expended to date, Lead Counsel will spend additional time preparing Plaintiffs' motion and reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Stern Decl. ¶5.

Plaintiffs' Counsel's lodestar, based on its attorneys' current rates, is $243,532.50. Stern Decl. ¶7. An award of 25% of the Settlement Fund, or $462,500, results in a lodestar multiplier of 1.89 for the attorneys' fees award, well within the range typically awarded in this District. *E.g., Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (6.85 multiplier "well within the range of multipliers that courts have allowed"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (3.07 multiplier is reasonable); *Feller v. Transamerica Life Ins. Co.*, No. 16CV01378CASGJSX, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier appropriate ); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). The lodestar crosscheck, therefore, supports Plaintiffs' request for 25% of the Settlement Amount in attorney's fees.

### 7.   The Settlement Class's Reaction Supports the Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL

1594403, at *21 *see also Omnivision*, 559 F. Supp. 2d at 1048. To date, 54,230 potential Settlement Class Members were notified about the Settlement by mailed Postcard Notices or emailed links to the Long Notice and Claim Form. Declaration of Margie Craig ("Craig Decl.") Attached as Exhibit 5 of the Stern Decl., ¶2. The Claims Administrator also published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. *Id*. ¶7. The Postcard Notice and Summary Notice each directed potential Settlement Class Members to where they could access the full-length Notice, which was also posted on a Settlement-specific website. *Id.* ¶9. The Notice informed Settlement Class Members that Counsel would seek attorneys' fees of up to one third of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $40,000, and that they would seek an Award to Plaintiffs of up to $5,000 each, Craig Decl., Exhibit B (Long Notice) at 1. The Notice also advised Settlement Class Members of their right to object to these requests for relief or to request exclusion from the Settlement, and explained how to do so.

The deadline for potential Settlement Class Members to submit objections and requests for exclusion is April 7, 2023. To date, no Settlement Class Member has objected to the Settlement or to the requested attorneys' fees or reimbursement of expenses. Craig Decl. ¶11. The lack of objections demonstrates the positive reaction of the Settlement Class, which strongly supports the fee request. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("The lack of objection from any Class Member supports the attorneys' fees award"). The Claims Administrator has received no valid exclusion requests. Craig Decl. ¶10. No valid requests for exclusion further demonstrates the positive reaction of the Settlement Class, which supports the requested fee. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supported approval of the settlement); *In re Sumitomo Copper Litig.*, 189

F.R.D. 274, 281 (S.D.N.Y. 1999) (reaction of class supported settlement when two large traders and small number of other class members representing under 1% of class opted-out of the settlement).

## II. PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $40,000. Craig Decl., Exhibit B at 2. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

Plaintiffs' Counsel pursued this litigation knowing it could recover expenses only if Plaintiffs and the putative Class prevailed at trial and survived on appeal or reached a settlement. Plaintiffs' Counsel had no incentive to incur, and did not incur, unnecessary expenses. All expenses were reasonably incurred and necessary for the prosecution of this litigation. Stern Decl. ¶8. The bulk of the expenses consisted of fees for a financial expert, investigator fees, and notice to class members. *Id*. The financial expert was needed to analyze potential damages so that Plaintiffs' Counsel could properly evaluate and negotiate the Settlement, and to provide a declaration to the Court. The remainder of the expenses consisted primarily of court filing fees, *pro hac vice* fees, online legal research fees, and travel fees. *Id*. Courts have held that these and similar types of expenses are properly charged to the Settlement Class. *E.g., Katz*, 2013 WL 11237202, at *8; *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research granted as they were all reasonable and necessary). The categories of expenses for which Lead Counsel seeks reimbursement are the type firms routinely bill to hourly clients and, therefore, should be paid out of the common fund.

### III.    THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS

The Court should also award Plaintiffs $5,000 each, or $15,000 total, as compensation for the time they spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014); *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) ("Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Throughout this litigation, Plaintiffs were available to Counsel as needed and performed their duties with attentiveness and diligence, including by (1) Gordley volunteering to file a motion seeking appointment as lead plaintiff; (2) reviewing complaints, motion papers and other pleadings; (3) regularly communicating and corresponding with counsel regarding the litigation and settlement; (4) gathering and producing information to Lead Counsel concerning

their investments in CD Projekt securities; and (5) agreeing to make themselves available for depositions, if needed, and to testify if there were a trial. *See* Stern Decl. Exhibits 2-4 (Declarations of James Gordley, Phillip Trefethen, and Steven Shaginyan). As shown in their respective declarations, Mr. Gordley, Mr. Trefethen, and Mr. Shaginyan were all actively involved in the case and put the concerns of the Settlement Class at the forefront. These are the kinds of activities that warrant reimbursement for the time and effort Plaintiffs expended on the Settlement Class's behalf. Each plaintiff is well qualified to represent the class with professional or educational experience relevant to the litigation. Mr. Gordley has done coursework in computer graphics, which is relevant to the video game industry. Stern Dec. Ex. 2, ¶12. Mr. Trefethen has experience in the military and in administering a complex compensation fund for the Veteran's Administration. Stern Dec. Ex. 3, ¶12. Mr. Shaginyan has worked in the cloud computing industry with video game company clients. Ex. 4, ¶12.

The Notice informed Settlement Class Members that Lead Counsel would seek an award for Plaintiffs not to exceed $5,000 each. Craig Decl., Exhibit B at 1. To date, no objections have been raised in response to this request. Craig Decl. ¶11.

Courts in this Circuit routinely award representative plaintiffs greater amounts. *See, e.g., Brown v. China Integrated Energy Inc.*, No. CV1102559BROPLAX, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) ($10,000 each to lead plaintiffs); *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) ($20,000 reimbursement to lead plaintiff); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) ($10,000 reimbursement to lead plaintiffs); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) ($10,000 award to plaintiff).

Plaintiffs dedicated their own valuable time, faithfully representing the Settlement Class. Here, the requested Award to Plaintiffs is reasonable, amounting to 0.8% of the Settlement Fund. The Court should award the requested amount to Plaintiffs.

Although the Court appointed only James Gordley as Class Representative, an award to the named plaintiffs is appropriate as well. The presence of additional named plaintiffs strengthened the Plaintiffs' bargaining position because it increased the likelihood that, had the case continued, plaintiffs would have been able to identify at least one adequate and typical class representative. Other courts have awarded non-class representative plaintiffs awards in the past. In *Fleming v. Impax Laboratories,* only the additional named plaintiff Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada, and not the original lead plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund sought appointment as class representative. *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2021 WL 5447008, at *1 (N.D. Cal. Nov. 22, 2021). Nonetheless, the district court awarded both plaintiffs awards, even though the lead plaintiff was not appointed as a class representative. *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *10 (N.D. Cal. July 15, 2022). In addition, in a non-PSLRA class action case, the district court awarded incentive awards to individuals who had previously been plaintiffs in the action but had had their claims dismissed because they had never filed an underlying case transferred into the MDL. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369798, at *9 (D. Kan. Nov. 17, 2021), judgment entered, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369815 (D. Kan. Nov. 17, 2021). The court cited several "persuasive legal authority permitting service awards to class members who have provided significant contributions to the prosecution of a case, including sitting for a deposition, even if those class members aren't named as class representatives." *In*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)

*re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369798, at *9 (D. Kan. Nov. 17, 2021), judgment entered, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369815 (D. Kan. Nov. 17, 2021) (collecting cases). In *In re TFT-LCD*, the court awarded incentive awards to 40 court-appointed class representatives and eight additional named plaintiffs. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *17 (N.D. Cal. Apr. 3, 2013). In the alternative, it could also be appropriate to appoint named plaintiffs as class representatives *nunc pro tunc*, as they meet the qualifications for acting as class representatives, as set forth in their declarations filed in connection with the motion for preliminary approval. Dkt. Nos. 78-3, 78-4.

## IV.    CONCLUSION

For the foregoing reasons, the Court should award: (i) attorneys' fees of 25% of the Settlement Amount together with interest thereon; (ii) reimbursement of expenses of $26,267.41; and (iii) $5,000 each to Plaintiffs.

Dated: March 8, 2023

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Jonathan Stern*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Jonathan Stern (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jstern@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

CERTIFICATE OF COMPLIANCE WITH LR 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6945 words, which complies with the word limit of L.R. 11-6.1.

March 8, 2023

/s/ *Jonathan Stern*

Jonathan Stern

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FEES AND EXPENSES; 20-11627 FMO (RAOx)