Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TRAMPE, Individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>CD PROJEKT S.A., ADAM MICHAL KICIŃSKI, MARCIN IWIŃSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI,<br><br>  Defendants. | Case No. CV 20-11627 FMO (RAOx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS**<br><br><u>CLASS ACTION</u><br><br>Date: June 1, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   CASE BACKGROUND ......................................................................3

   A. Plaintiffs' Allegations .................................................................3

   B. Procedural History and Settlement ..............................................3

III.  CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED......4

IV.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL........5

   A. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement ...............................................................6

      1.  Plaintiffs Faced the Risk of Dismissal ......................................7

      2.  Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial .......................................8

      3.  Plaintiffs Faced Additional Risks of Continued Litigation .....................9

   B. The Amount Obtained in Settlement Supports Final Approval ....................10

   C. The Stage of the Proceedings Support Final Approval .................................12

   D. The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel...........................................14

   E. The Favorable Reaction of the Settlement Class Supports Approval ...........15

   F. The Settlement Meets the Remaining Rule 23(e)(2) Factors ........................17

      1.  The Proposed Method for Distributing Relief Is Effective...................17

      2.  The Proposed Award of Attorneys' Fees is Appropriate.......................17

      3.  The Parties Have No Other Agreements Besides Opt-Outs ...................18

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.   There is No Preferential Treatment, the Proposed Plan of Allocation Treats Class Members Equitably ........................................................... 18

G.   The Court Should Approve the Plan of Allocation ....................................... 19

V.   NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS . 20

VI.   CONCLUSION .................................................................................................. 21

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Baker v. SeaWorld Ent., Inc.*,

5

   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020).........21

6

*Basic Inc. v. Levinson*,

7

   485 U.S. 224 (1988)..................................................................................8

8

*Christine Asia Co. v. Yun Ma*,

9

   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............15

10

*Chun-Hoon v. McKee Foods Corp.*,

11

   716 F. Supp. 2d 848 (N.D. Cal. 2010).......................................................16

12

*Churchill Vill., L.L.C. v. Gen. Elec.*,

13

   361 F.3d 566 (9th Cir. 2004)...................................................................16

14

*Destefano v. Zynga, Inc.*,

15

   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)...................16

16

*Dura Pharms., Inc. v. Broudo*,

17

   544 U.S. 336 (2005)..................................................................................7

18

*Eminence Cap., LLC v. Aspeon, Inc.*,

19

   316 F.3d 1048 (9th Cir. 2003) ...................................................................8

20

*Evans v. Jeff D.*,

21

   475 U.S. 717 (1986)..................................................................................5

22

*Glass v. UBS Fin. Servs., Inc.*,

23

   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .....................13

24

*Hanlon v. Chrysler Corp.*,

25

   150 F.3d 1011 (9th Cir. 1998) ......................................................6, 10, 17

26

27

28

iii

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................. 18

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................... 7

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ........................................................................ 11

*In re BankAtlantic Bancorp, Inc.*,
    No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................ 10

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..................... 20

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................................. 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................... 12

*In re GTT Comnc'ns, Inc. Sec. Litig.*,
    No. 2:21-CV-00270-DOC-AS (C.D. Cal. Mar. 22, 2022) .................................... 13

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....... 7, 9, 12, 14

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................... 14, 21

*In re LJ Int'l, Inc. Sec. Litig.*,
    No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ........... 7

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................. 5, 11, 12, 13

*In re NeoPharm, Inc. Sec. Litig.*,
    705 F. Supp. 2d 946 (N.D. Ill. 2010) ................................................................. 9

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. passim

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ....................................................................... 9

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ....................................................................... 14

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................... 21

*In re Portal Software, Inc. Sec. Litig.*,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)..................... 14

*In re Puda Coal Sec. Inc., Litig.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014) ............................................................. 9

*In re Rambus Inc. Derivative Litig.*,
   No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ............... 15

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........ 12

*In re Silver Wheaton Corp. Sec. Litig.*,
   2017 WL 2039171 (C.D. Cal. May 11, 2017) ................................................. 5

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................. 7

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ..................................................................... 5

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................... 19

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................. 14

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ........... 12

*Kamakana v. City & Cnty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ............................................................................ 18

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................. 15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .............................................................................. 6

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................................ 13

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................. 6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   No. 2:10-CV-00302 MRP, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) .............. 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 10, 14, 15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .................................................................. 6, 10, 11

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........... 15

*Perez v. IZEA, Inc.*,
   No. 18-cv-02784-SVW-GJS (C.D. Cal. Sept. 26, 2019) ...................................... 13

*Rieckborn v. Velti PLC*,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................................................... 13

*Riker v. Gibbons*,
   No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .......... 14, 19

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................... 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................... 21

*Romero, et al., v. Growlife, Inc., et al.*,
   Case No. 2:14-cv-03015-CAS-JEM ...................................................... 11

*Salazar v. Midwest Servicing Grp., Inc.*,
   No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ............... 6

*Tom v. Com Dev USA, LLC*,
   No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) .............. 6

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................. 5, 6

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................... 7

**Statutes**

15 U.S.C. § 78u-4(a) .......................................................................... 18, 21

**Rules**

Fed. R. Civ. P. 23 ...........................................................................passim

1    Lead Plaintiff James W. Gordley, and additional plaintiffs Steven Shaginyan and

2    Phillip Trefethen ("Plaintiffs") submit this memorandum in support of their Motion for

3    Final Approval of the Settlement and Plan of Allocation, and Final Certification of the

4    Settlement Class.[1]

## I.    INTRODUCTION

Plaintiffs and Defendants CD Projekt, S.A. ("CD Projekt" or the "Company"), Adam Michal Kiciński, Marcin Iwiński, Piotr Marcin Nielubowicz, and Michał Nowakowski ("Defendants" and with Plaintiffs, "Parties") reached a settlement of this securities class action for $1,850,000 ("Settlement"). Stipulation, at 1. The Settlement, reached only after arm's-length negotiations, is a fair, reasonable, and adequate result, recovering approximately 16.8% of the maximum estimated damages of $11 million under Plaintiffs' best-case scenario as estimated by Plaintiffs' damages expert (Dkt No. 78-7), despite significant risk.

Plaintiffs now seek final approval of the Settlement. If approved, the Settlement will completely resolve the Action, settling all claims of Settlement Class Members who have not submitted valid requests for exclusion. The Settlement provides a substantial recovery to the Settlement Class despite several obstacles that Plaintiffs faced, including Defendants' anticipated motions to dismiss, the availability of evidence, Defendants' potential defenses, the risks of prosecuting this litigation through trial and appeals, and the real danger that Plaintiffs would not be able to obtain

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement, filed on April 28, 2022 ("Settlement" or "Stipulation") (Dkt. No. 77). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Craig Decl." are to the Declaration of Margery Craig Concerning: Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections. Dkt. No. 87-7. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, and Award to Plaintiffs. Dkt. No. 87.

1  a larger sum if litigation were to continue, as there were no available insurance funds

2  and the same Defendants were facing several other competing lawsuits, investigations,

3  and liabilities.

4       The terms of the Settlement are set forth in the Stipulation. In the Court's Order

5  re: Motion for Preliminary Approval of Class Action Settlement ("Preliminary

6  Approval Order"), Dkt. No. 86, the Court preliminarily approved the Settlement,

7  preliminarily certified the Settlement Class for settlement purposes, and directed that

8  notice be disseminated to potential members of the Settlement Class.

9       To grant final approval of the Settlement, this Court will evaluate whether it is

10  "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount

11  in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e).

12  Plaintiffs believe their case is strong, but they determined that executing the Settlement

13  was in the best interests of the Settlement Class, especially given the risks inherent in

14  this complex litigation. Even if Plaintiffs survived the motion to dismiss, they faced

15  other material obstacles to proving their claims, such as prevailing at class certification,

16  summary judgment, and trial. Rather than engaging in expensive, protracted litigation

17  with no assurance of success, Plaintiffs agreed to an early resolution of this action as

18  the best outcome for the Settlement Class. Through protracted negotiations with

19  Defendants, Plaintiffs obtained a Settlement that is fair, reasonable, and adequate under

20  the circumstances. The Settlement eliminates the risks of continued litigation and locks

21  in a substantial recovery for the Settlement Class. In light of the obstacles to recovery

22  and the significant amount of time and expenses that continued litigation would entail,

23  the Court should approve the Settlement as fair, reasonable, and adequate.

24       The Court will also evaluate whether the proposed Plan of Allocation ("Plan")

25  is fair, reasonable, and adequate. Here, Lead Counsel developed the proposed Plan in

26  consultation with Plaintiffs' damages expert and the Claims Administrator. The

27  proposed Plan comports with applicable legal principles and Plaintiffs' theory of

28

damages, and in no way favors Plaintiffs over other members of the Settlement Class. The Court should approve the Plan.

## II.   CASE BACKGROUND

### A.   Plaintiffs' Allegations

CD Projekt, SA is a Polish video game developer. As a relatively small video game developer, CD Projekt competes with larger developers by focusing almost all the company's efforts on one single game at a time, releasing a new title once every several years. From 2015 to 2020, that game was Cyberpunk 2077. Beginning in January of 2020 CD Projekt assured the public that Cyberpunk 2077 was a complete and playable game and was pending final refinements before release on multiple platforms, including the highly popular PlayStation 4 and Xbox One gaming consoles. Throughout 2020, CD Projekt assured the public that it had essentially completed versions of the game for those two consoles. In reality, however, the games were virtually unplayable on the PlayStation 4 and Xbox One consoles. Having delayed the game several times however, CD Projekt's executives were determined to release the game in 2020 and reap the financial rewards, whether or not the game was actually finished. CD Projekt attempted to conceal the fact that the Sony PlayStation 4 and Microsoft Xbox One games did not work until the last moment by refusing to provide advance copies of those versions of the game to reviewers. However, when CD Projekt released the game, the problems became immediately obvious, with fans expressing their outrage on the internet and demanding refunds. Sony and Microsoft responded to this customer outrage, with Microsoft placing a warning label about the game's lack of functionality on their electronic Xbox store, and Sony removing the game from their electronic PlayStation store altogether. As a result, CD Projekt's price declined by more than 25%, harming investors.

### B.   Procedural History and Settlement

Two putative securities class actions were filed on December 24, 2020 and January 14, 2021, respectively, alleging violations of Sections 10(b) and 20(a) of the

3

Securities Exchange Act of 1934 ("Exchange Act"). On May 14, 2021, the Court consolidated the actions and appointed James Gordley as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Dkt. No. 38. On June 28, 2021 Plaintiffs filed the Consolidated Amended Complaint. Dkt. No. 41. On August 12, 2021 Defendants filed their motion to dismiss the Consolidated Amended Complaint. Dkt. No. 47. Plaintiffs filed their opposition on October 4, 2021. Dkt. No. 51. Defendants filed their reply on November 17, 2021. Dkt No. 55. Shortly thereafter, the parties began to negotiate a settlement and, on November 29, 2021, informed the Court that they had reached a settlement in principle. Dkt. No. 57.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 86 at 23. As detailed in Plaintiffs' brief in support of preliminary approval of the Settlement, Dkt. No. 78-1 at 4-10, certification of the Settlement Class under Rule 23 is merited here.

The Court thoroughly analyzed each element of Rule 23(a) and (b)(3) in the Preliminary Approval Order. Dkt. No. 86 at 7-15. No pertinent changes have transpired since the Court issued the Preliminary Approval Order that would upset or alter the Court's findings. Thus, the Court should grant final certification of the Settlement Class for settlement purposes.

In addition, Plaintiffs request that, in addition to the Lead Plaintiff, the Court appoints each Named Plaintiff as a class representative along with Lead Plaintiff *nunc pro tunc*. Plaintiffs have submitted declarations in connection with the filing of the motion for preliminary approval indicating that they have reviewed the complaint and relevant documents in this litigation and stand ready and willing to represent the interests of the class. Dkt. No, 78-3 ¶11, Dkt. No, 78-4 ¶11, Dkt. No, 78-5 ¶11. There is no indication of any conflict of interests between Plaintiffs and the Settlement Class, thus Plaintiffs are adequate class representatives. *In re Silver Wheaton Corp. Sec. Litig.*,

2017 WL 2039171, at *7–8 (C.D. Cal. May 11, 2017). Plaintiffs have adjusted the proposed order submitted herewith to reflect this.

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23 requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and  appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status

throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant[2]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, the Rule 23(e) and Ninth Circuit factors weigh in favor of final approval.

### A. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Torrisi*, 8 F.3d at 1375–76 (finding that "the cost, complexity and time of fully litigating the case" supported approval). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Securities actions are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th

---

[2] There was no government participant here, so this factor is neutral. *See Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

Cir. 2020). Lead Counsel and Plaintiffs carefully evaluated the merits of this case considering the risks and potential weaknesses before entering into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed to the Settlement Class in continuing to litigate this action. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class's ultimate recovery be less than the proposed settlement).

### 1.    Plaintiffs Faced the Risk of Dismissal

Securities class action plaintiffs face myriad procedural hurdles. Failing at any one stage of the litigation could defeat the class action. While the motion to dismiss the Complaint had not yet been decided at the time of the Settlement, Defendants have asserted challenges to personal jurisdiction, *forum non conveniens*, falsity, and scienter. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). To plead scienter, Plaintiffs must allege that Defendants made false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter in particular is a difficult element to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Here, Plaintiffs faced a difficult burden to overcome the motion to dismiss Defendants deny any wrongdoing and presented a multi-pronged defense.

While Plaintiffs believe their arguments opposing an anticipated motion to dismiss are strong, there is no guarantee they would prevail before the Court. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes heightened

1   pleading burdens on securities fraud plaintiffs that are "not [] easy [] to comply with."
2   *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

3        **2.**    **Plaintiffs Faced the Risks of Obtaining Class Certification and**
4                   **Maintaining Class Action Status Through Trial**

5        Even if Plaintiffs defeated the anticipated motions to dismiss, they would still
6   need to undertake the complex and expensive task of obtaining certification of the
7   putative class. One of the more difficult elements of class certification to satisfy is
8   showing that class-wide issues, such as reliance on Defendants' misrepresentations,
9   predominate over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S.
10  224 (1988), to show their entitlement to the presumption of class-wide reliance,
11  Plaintiffs would need to prove that CD Projekt shares and ADRs traded in an efficient
12  market during the Class Period, such that new, material information was rapidly
13  incorporated into the price of the securities.

14       To satisfy the *Basic* presumption, Plaintiffs would need to hire an expert
15  economist to conduct an event study showing the price reaction of CD Projekt
16  securities to new, material information, prepare a report, and testify at a deposition on
17  the issue of market efficiency. Such well-qualified experts are expensive. Rosen Decl.
18  ¶30. Defendants would likely contest the efficiency of the market for CD Projekt
19  securities. Defendants would present their own expert report and testimony to oppose
20  class certification. In addition to briefing the certification motion, Plaintiffs would need
21  to produce and review documents, sit for depositions, and take the opposing expert's
22  deposition.

23       Even if Plaintiffs obtained class certification, they faced a risk that they would
24  not be able to sustain class certification through judgment. Rule 23(c)(1) expressly
25  provides that a class certification order may be "altered or amended before final
26  judgment." A class is not safely certified until judgment. *Omnivision*, 559 F. Supp. 2d
27  at 1041 ("there is no guarantee the [class] certification would survive through trial, as
28  Defendants might have sought decertification or modification of the class"). While

1  rare, a change in the law or facts might upset certification. Thus, the necessity of

2  complex and costly class certification proceedings together with the risk this Court may

3  have denied certification, supports the Settlement's adequacy.

4  **3.     Plaintiffs Faced Additional Risks of Continued Litigation**

5        Even if Plaintiffs overcame these substantial hurdles, there is no question that

6  further litigation would be risky, complex, and expensive. First, Plaintiffs would need

7  to engage in formal fact discovery, requiring review of thousands of documents, many

8  of which are likely in Polish, and taking depositions of Defendants, CD Projekt

9  employees, and non-parties, many of which would likely require translators. Rosen

10  Decl. ¶32. After the close of fact discovery, the Parties would engage in expert

11  discovery on the questions of loss causation and damages. Defendants would likely

12  present their own expert testimony to demonstrate that the revelation of the fraud did

13  not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion

14  of the alleged stock drops were attributable to other issues unrelated to the revelation

15  of the fraud. *Id.* ¶30. All told, expert discovery and trial preparation would prove

16  expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6.

17        Even if Plaintiffs prevailed on class certification, Plaintiffs might lose on

18  summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th

19  Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed

20  to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F.

21  Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs

22  failed to prove falsity or scienter). Plaintiffs may have an expert excluded, damaging

23  their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y.

24  2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

25        Plaintiffs might also lose at trial, or the jury might reduce damages significantly.

26  *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict

27  (reporting that according to defendants, plaintiffs won only 5% of the damages they

28

1   requested).³ Plaintiffs might still lose their case even after winning at trial. *In re*
2   *BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla.
3   Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp,*
4   *Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law
5   against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs survive
6   summary judgment and motions to exclude their experts, win at trial, secure a verdict
7   for damages, and then defend the verdict from Defendants' inevitable post-trial
8   motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116
9   F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict).

10      Accordingly, the likely duration and expense of further litigation also supports a
11  finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural*
12  *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)
13  ("[U]nless the settlement is clearly inadequate, its acceptance and approval are
14  preferable to lengthy and expensive litigation with uncertain results").

15  **B.    The Amount Obtained in Settlement Supports Final Approval**

16      The determination of a reasonable settlement is not susceptible to a mathematical
17  equation yielding a particularized sum. Nor is the proposed Settlement "to be judged
18  against a hypothetical or speculative measure of what might have been achieved by the
19  negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of
20  compromise[,] the question we address is not whether the final product could be
21  prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."
22  *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a
23  compromise; in exchange for the saving of cost and elimination of risk, the parties each
24  give up something they might have won had they proceeded with litigation." *Officers*
25  *for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a
26  settlement than they would after a complete trial victory or Defendants would have no

27  ───────────────
28  ³ *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-
    victory-in-rare-jury-trial-verdict/

reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiffs could secure or enforce a judgment at or near the full amount of the class-wide damages they estimate. Indeed, the Ninth Circuit has found that a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459. Moreover, Courts in this District have approved similarly structured settlements of consideration comprised of cash and stock. *See Romero, et al., v. Growlife, Inc., et al.*, Case No. 2:14-cv-03015-CAS-JEM (Dkt. No. 56).

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated damages would be reduced or eliminated entirely if one of the subclasses of securities was not certified, or if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs prevailed on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered the significant risk that it would be unable to recover a greater amount further down the road.

The Settlement provides a substantial benefit for Settlement Class Members. The Settlement recovers roughly 16.8% of Plaintiffs' maximum estimated class-wide damages. (Dkt No. 78-7). This recovery is reasonable and compares favorably with typical recoveries in other securities class actions. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*,

279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class total estimated losses"). According to Cornerstone Research, approximately 36% of securities class actions settled for less than $5 million in 2021.[4] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages under $25 million was approximately 12.5% of estimated damages in 2021, and 18.2% between 2012-2020. *Id.* Between 2017-2021, securities class actions that settled before motions to dismiss were filed recovered a median of $5.8 million and 4.5% of estimated damages. *Id.* Thus, the amount of the Settlement shows it is a reasonable and adequate result.

### C.    The Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications [that] the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016) (internal quotations omitted).

During the PSLRA-mandated discovery stay, Lead Counsel reviewed CD Projekt' public filings and statements during the Class Period and other publicly available news reports as well as retained an investigator to interview former CD Projekt employees and third parties. Rosen Decl. ¶26.

---

[4] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2021 Review and Analysis (Cornerstone Research), at 4, 6, and 14 *available* at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

12

Through their investigation, as well as their review of Defendants' motion to dismiss, Lead Counsel determined the scope and strength of the claims Plaintiffs could bring on behalf of the putative class, and the corresponding misrepresentations and/or omissions. *Id.* Through these efforts, Plaintiffs and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation. *Id.* Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (approving settlement before decision on motion to dismiss); *Perez v. IZEA, Inc.*, No. 18-cv-02784-SVW-GJS (C.D. Cal. Sept. 26, 2019) (Dkt. No. 50) (approving settlement before filing of amended complaint); *In re GTT Comnc'ns, Inc. Sec. Litig.*, No. 2:21-CV-00270-DOC-AS (C.D. Cal. Mar. 22, 2022) (Dkt. No. 65) (approving settlement before motions to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, at the time of Settlement, Plaintiffs and Lead Counsel had acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery). Plaintiffs and Lead Counsel

13

1  were sufficiently informed at this stage of the litigation to negotiate a reasonable
2  Settlement, supporting final approval.

3      **D.      The Proposed Settlement Resulted from Good Faith Arm's-Length**
4              **Negotiations by Informed, Experienced Counsel**

5          Courts presume that a proposed settlement is fair and reasonable when it results
6  from arm's-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03
7  5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No.
8  3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial
9  presumption of fairness is usually involved if the settlement is recommended by class
10 counsel after arm's-length bargaining").

11         In addition to the non-collusive, vigorous settlement negotiations, counsel on
12 both sides of this Action are experienced and knowledgeable when it comes to litigating
13 complex, securities class actions. "Parties represented by competent counsel are better
14 positioned than courts to produce a settlement that fairly reflects each party's expected
15 outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.
16 1995); *Heritage Bond*, 2005 WL 1594403, at *9 (in a complex class action, counsel is
17 "most closely acquainted with the facts of the underlying litigation"). "Absent fraud,
18 collusion, or the like," the Court should give "[g]reat weight [] to the recommendation
19 of counsel, who are most closely acquainted with the facts of the underlying litigation,"
20 *Heritage Bond*, 2005 WL 1594403, at *9; *DirecTV*, 221 F.R.D. at 528 (internal
21 quotations omitted).

22         Rosen Law's experience and reputation allowed it to leverage the credible threat
23 of further litigation and trial, but also to recognize that the Settlement was a better
24 option for the Settlement Class. Courts in this District, as well as others, has recognized
25 that Rosen Law "has the necessary skill and knowledge to effectively prosecute"
26 securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL
27 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co.*
28 *Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly

1   qualified [and] experienced' in securities class actions"); *Christine Asia Co. v. Yun Ma*,

2   No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019),

3   *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d

4   Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by

5   investors in a Chinese company that "the quality of representation by both [Rosen] and

6   Defendants' counsel was high in this case."). *See also,* Ex. 1 to the Declaration of

7   Jonathan Stern, Dkt. No. 87-3. Thus, Lead Counsel's experience supports approval.

8   Likewise, Defendants' counsel, Cooley LLP, is a preeminent firm with skilled

9   securities litigation practitioners, who vigorously represented their clients and were

10   equally knowledgeable about the merits of the case.

11       Finally, Plaintiffs' support for the Settlement is further evidence that the

12   Settlement is fair, reasonable, and adequate. *See* Dkt. Nos. 78-3 – 78-5. (Plaintiffs'

13   declarations). Plaintiffs' support for a settlement should be accorded "special weight

14   because [the plaintiff] may have a better understanding of the case than most members

15   of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation

16   (Third) § 30.44 (1995)). The protracted arms' length negotiations and the support of

17   both experienced counsel and Plaintiffs favors final approval of the Settlement.

18       **E.    The Favorable Reaction of the Settlement Class Supports Approval**

19       The absence of objections to a proposed class action settlement supports

20   approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*,

21   No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the

22   absence of a large number of objections to a proposed class action settlement raises a

23   strong presumption that the terms of a proposed class settlement action are favorable

24   to the class members").

25       To date, 14,834 potential Settlement Class Members were notified of the

26   Settlement by mailed Postcard Notice or by emailed link to the Settlement website with

27   the Long Notice and Claim Form. Supplemental Declaration of Margery Craig ("Craig

28   Supp. Decl."), attached as Exhibit 1 to the Rosen Decl., ¶3. The Claims Administrator

caused 8,176 copies of the Postcard Notice to be mailed to potential Settlement Class Members. *Id.* The Claims Administrator declares that they or a nominee had emailed 6,649 customers to notify them of the Settlement, including links to the Long Notice and Claim Form on the settlement website and SCS sent a link to the Long Notice and Claim Form. *Id.* The deadline to file objections is April 7, 2023. To date, no Settlement Class Members have objected to the Settlement. *Id*. ¶8; Rosen Decl. ¶19. Plaintiffs will respond to any subsequent duly lodged objections, if any, in their reply.

The Claims Administrator did not receive any timely or valid requests for exclusion. Craig Supplemental Declaration, Craig Supp. Decl. ¶7. The Claims Administrator did receive an untimely request for exclusion but that request, in addition to being untimely, was invalid because the trades submitted were not domestic transactions in CD Projekt securities. *Id.* That no valid or timely requests for exclusion were received supports the Settlement's approval. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supports settlements' approval.); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (16 valid exclusion requests representing 0.176% of public shares, supported settlement approval); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement).

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The absence of any objections and exclusion requests supports final approval.

### F.     The Settlement Meets the Remaining Rule 23(e)(2) Factors

#### 1.     The Proposed Method for Distributing Relief Is Effective

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which Plaintiffs and the Claims Administrator duly executed. As the Court directed in the Preliminary Approval Order, the Claims Administrator mailed a Postcard Notice to all those who could be identified with reasonable effort, emailed and cause to be emailed Links to the Long Notice and Claim Form, and published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Craig Decl. ¶¶2-9. The Postcard notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Long Notice, Claim Form, and Preliminary Approval Order. *Id.* ¶9, and Exhibit A.

Settlement Class Members are to complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan. The case-specific website also allowed Settlement Class Members to file their claims electronically.

#### 2.     The Proposed Award of Attorneys' Fees is Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, plus interest, and expenses of $26,267.41. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Long Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, 12-14.

Plaintiffs also request $5,000 each, or $15,000 total, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with its representation of the Settlement Class. Plaintiffs supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with CD

1   Projekt generally. Plaintiffs spent significant time representing the Settlement Class.
2   Declaration of Jonathan Stern, Dkt. No. 87-2, Exs. 2-4 (Plaintiffs' declarations) ¶9.
3   Plaintiffs' request for compensation is appropriate, as courts regularly grant similar
4   awards to representative plaintiffs. *See* Fee Brief, section III.

5   ### 3.    The Parties Have No Other Agreements Besides Opt-Outs

6   Rule 23 requires that any agreement made in connection with the proposed
7   Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the
8   Stipulation (¶10.3) and in Plaintiffs' brief in support of preliminary approval (Dkt. No.
9   78-1 at 17), the Parties entered into a Supplemental Agreement that gives CD Projekt
10  the right to terminate the Settlement if Settlement Class Members holding more than a
11  certain number of shares opt out. Only the agreement's exact terms—specifically, the
12  number of shares that trigger the right to terminate—has not been disclosed to
13  Settlement Class Members. This Supplemental Agreement poses no obstacle to final
14  approval of the Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,
15  1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL
16  4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the
17  number of class members who opt out of the Settlement does not by itself render the
18  Settlement unfair."). CD Projekt did not exercise its termination option.

19  ### 4.    There is No Preferential Treatment, the Proposed Plan of
20  Allocation Treats Class Members Equitably

21  Rule 23 requires courts to evaluate whether the settlement treats class members
22  equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan determines how
23  the money is distributed to Authorized Claimants. The Settlement Fund is distributed
24  *pro rata* to each Settlement Class member who submits a valid claim based on their
25  recognized losses resulting from the stock price declines during the Settlement Class
26  Period, as alleged in the Complaint. Lead Counsel developed the Plan in consultation
27  with Plaintiffs' damages expert, and the Plan closely tracks the theory of the case.
28

18

1  Rosen Decl. ¶23-25. The Plan will determine Plaintiffs' recovery just like every other
2  Settlement Class Member, so Plaintiffs receive no preferential treatment.

3        **G.**    **The Court Should Approve the Plan of Allocation**

4        In the Preliminary Approval Order, the Court preliminarily approved the Plan,
5  which was detailed in the Long Notice. Plaintiffs now request that the Court grant final
6  approval of the Plan for the purpose of administering the Settlement. Courts assess
7  plans of allocation by the same metric as settlements as a whole: they must be "fair,
8  reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking,
9  "[a]n allocation formula need only have a reasonable, rational basis, particularly if
10 recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec.*
11 *Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

12       The proposed Plan has a reasonable, rational basis. It distributes the settlement
13 proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused
14 by Defendants' alleged misrepresentations and omissions, based on factors such as
15 when and at what prices the claimant purchased and sold CD Projekt securities.
16 Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the
17 Settlement proceeds among Claimants with the goal of reimbursing Settlement Class
18 Members in a fair and reasonable manner. Rosen Decl. ¶¶23-25. *See Riker*, 2010 WL
19 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this
20 litigation, and based on these consultations, has determined that the terms agreed upon
21 in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs'
22 claims").

23       Because they tend to mirror the complaint's allegations in securities class
24 actions, "plans that allocate money depending on the timing of purchases and sales of
25 the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525
26 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument*
27 *Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (finding plan of allocation was
28 "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their

1   recognized losses based largely on when they bought and sold their shares"). Here,

2   each authorized claimant will receive a *pro rata* share of the Net Settlement Fund based

3   on the claimant's recognized loss as calculated in accordance with the Plan. Rosen

4   Decl. ¶24. There have been no objections to the Plan from any potential Settlement

5   Class Members. Craig Supp. Decl. ¶8; Rosen Decl. ¶19. The Plan fairly compensates

6   Settlement Class Members and should be approved.

7   **V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS**

8         Plaintiffs provided the Settlement Class with adequate notice of the Settlement,

9   in the manner and form that the Court preliminarily approved. There were 14,834

10  Settlement Class Members notified about the Settlement. Craig Supp. Decl., ¶6. Of

11  this, there were 8,176 Postcard Notices mailed and 6,649 emails linked to the Long

12  Notice and Claim Form. *Id.*, ¶6. The Claims Administrator also published the Court-

13  approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business*

14  *Daily* on December 12, 2022. Craig Decl. ¶7. The Claims Administrator also published

15  all information regarding the Settlement online on the Settlement website. *Id.* ¶9. The

16  notice plan executed here directed notice in a "reasonable manner to all class members

17  who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1)(B).

18        The Notice provides all necessary information for Settlement Class Members to

19  make an informed decision regarding the proposed Settlement. It "generally describes

20  the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

21  investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

22  948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the

23  information they needed to decide whether to opt out, object, or file a claim. It told

24  Settlement Class Members, among other things: (1) the amount of the Settlement; (2)

25  why the parties propose the Settlement; (3) the estimated average recovery per

26  damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead

27  Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class

28  Members could object to the Settlement or exclude themselves from the Settlement

1  Class, and the consequences thereof; and (7) the dates and deadlines for certain

2  Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that

3  the Net Settlement Fund would be distributed to eligible Settlement Class Members

4  who submit valid and timely claim forms under the Plan as described in the Notice.

5      In sum, the Notice fairly apprised Settlement Class Members of their rights, is

6  the best notice practicable under the circumstances, and complies with the Court's

7  Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due

8  process. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020

9  WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020); *In re Immune Response Sec. Litig.*,

10 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*,

11 No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving

12 similar notice program).

13 **VI.    CONCLUSION**

14      For the foregoing reasons, the Court should: (a) finally certify the Settlement

15 Class; (b) find that the notice plan complied with all applicable requirements; and (c)

16 approve the Settlement and Plan as fair, reasonable, and adequate.

17

18  Dated: April 21, 2023          **THE ROSEN LAW FIRM, P.A.**

19

20                                */s/Laurence M. Rosen*
                                   Laurence M. Rosen (SBN 219683)
21                                 355 South Grand Avenue, Suite 2450
                                   Los Angeles, CA 90071
22                                 Telephone: (213) 785-2610
23                                 Facsimile: (213) 226-4684
                                   Email: lrosen@rosenlegal.com
24

25                                 Jonathan Stern (*pro hac vice* pending)
26                                 275 Madison Avenue, 40th Floor
                                   New York, NY 10016
27                                 Telephone: (212) 686-1060
28                                 Facsimile: (212) 202-3827

21

Email: jstern@rosenlegal.com

*Lead Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LR 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,931 words, which complies with the word limit of L.R. 11-6.1.

April 21, 2023

*/s/ Laurence Rosen*

Laurence Rosen

MORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-11627 FMO (RAOx)