Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TRAMPE, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CD PROJEKT S.A., ADAM MICHAL KICIŃSKI, MARCIN IWIŃSKI, PIOTR MARCIN NIELUBOWICZ, and MICHAŁ NOWAKOWSKI, <br><br> Defendants. | Case No. CV 20-11627 FMO (RAOx) <br><br> **DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS** <br><br> CLASS ACTION <br><br> Date: June 1, 2023 <br> Time: 10:00 a.m. <br> Courtroom: 6D <br> Judge: Hon. Fernando M. Olguin |

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

I, Laurence M. Rosen, declare as follows:

1.     I am the Managing Partner of The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel in the above-captioned Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.     I submit this declaration in support of the Motions by Lead Plaintiff James W. Gordley ("Gordley"), and additional plaintiffs Steven Shaginyan and Phillip Trefethen ("Plaintiffs")  for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and Award to Plaintiffs, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why the requests for attorneys' fees, reimbursement of expenses, and Award to Plaintiffs are reasonable and should be approved by the Court.

3.     The Settlement is $1,850,000, plus accrued interest. Stipulation ¶1.33. After attorneys' fees, reimbursement of expenses, Award to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons other than Defendants who purchased publicly traded CD Projekt S.A. ("CD Projekt") securities between January 16, 2020 and December 17, 2020, both dates inclusive, and who were damaged thereby.[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Motion for Preliminary Approval of Settlement, filed on April 28, 2022 ("Preliminary Settlement") (Dkt. No. 78).

[2] Excluded from the Settlement Class are: Defendants; the present and former officers, directors, and affiliates of CD Projekt at all relevant times; CD Projekt's employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired CD Projekt securities through any such plan(s); immediate family members, legal representatives, heirs, successors or assigns of any excluded person or entity; and any entity affiliated with any excluded person or in which any excluded person or entity has a controlling interest. Also excluded from the Settlement

2

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

4.      The memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.      On December 24, 2020, Andrew Trampe ("Trampe") filed the action *Trampe v. CD Projekt S.A., et al.*, Case No. 2:20-cv-11627 (C.D. Cal.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1. On January 14, 2021, River Hain filed a related action style as *Hain v. CD Projekt S.A., et al.*, 2:21-cv-00354 (C.D. Cal.) (the "*Hain* Action"), alleging the same claims. On May 14, 2021, the Court consolidated the two actions and administratively closed the *Hain* Action. Dkt. No. 38.

6.      On February 22, 2021, Gordley filed a motion seeking to be appointed Lead Plaintiff and for his counsel, Rosen Law to be appointed Lead Counsel. Dkt. No. 13. On May 14, 2021, the Court appointed Matthews as Lead Plaintiff and Rosen Law as Lead Counsel. Dkt. No. 38.

7.      On June 28, 2021, Plaintiffs filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint"). Dkt. No. 41.

8.      On August 12, 2021, Defendants filed a motion to dismiss the Complaint (the "Motion to Dismiss"). Dkt. No. 47.

9.      On October 4, 2021, Plaintiffs filed an opposition to the Motion to Dismiss. Dkt. No. 51.

10.      On November 17, 2021, Defendants filed a response in support of the Motion to Dismiss. Dkt. No. 55.

---

Class are those persons or entities who do not have compensatory losses and those who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order. Stipulation ¶1.34.

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

11.     On November 29, 2021, the Parties stipulated and requested that the Court hold the pending Motion to Dismiss in abeyance as the Parties reached a settlement in principle and were working to draft a settlement agreement. Dkt. No. 57. The Court granted that stipulation on December 7, 2021. Dkt. No. 58.

12.     On April 28, 2022, Parties filed a Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Settlement Motion"). Dkt. 78.

13.     On January 3, 2023, the Court entered its Order re: Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Dkt. No. 86.

14.     Pursuant to the Preliminary Approval Order at 23, on March 8, 2023, Lead Counsel submitted the Motion for Attorney Fees.

## II.     OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

15.     In the opinion of the team of lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

16.     As set forth herein and in the Final Approval Brief, the Settlement represents approximately 16.8% of the maximum estimated damages of $11 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This maximum estimated amount could only be recovered if: all the claims alleged survive to trial; a class is certified; a jury adopts Plaintiffs' expert's damages model; Plaintiffs defeat any appeals; and Defendants have the ability to pay such a judgment.

17.     A lump sum settlement in the face of these challenges is a favorable outcome for the Settlement Class. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

18. For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 25% of the Settlement Amount, or $462,500, and reimbursement of litigation expenses. This fee request is within the range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

19. The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice,[3] objections to the Settlement must be received by April 7, 2023. To date, there have been no objections to the Settlement. *See* Supplemental Declaration of Margery Craig Concerning: Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Supplemental Declaration" or "Craig Supp. Decl."), ¶8. A true and correct copy of the Craig Supplemental Declaration is attached hereto as **Exhibit 1**. If Rosen Law or the Claims Administrator, Strategic Claims Services ("SCS"), receives any objections, Plaintiffs will address them in their reply papers in support of final approval.

20. Pursuant to the Notice, requests for exclusion from the Settlement must be received by April 7, 2023. The Claims Administrator received no valid requests for exclusion. Craig Supplemental Decl. ¶7.

**III.   NOTICE PROCEDURES**

21. At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, on February 6, 2023, the Claims Administrator published the Summary Notice electronically on *GlobeNewswire* and in print in *Investor's Business Daily*. Dkt. No. 87-7 (declaration of Margery Craig, or the "Craig Decl."), ¶7. The Claims

---

[3] "Notice" collectively refers to the Postcard Notice, Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

Administrator also posted the Long Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on January 25, 2023. *Id.* ¶13.

22.    To date, 14,834 potential Settlement Class Members were notified of the Settlement by mailed Postcard Notice or by emailed link to the Settlement website with the Long Notice and Claim Form. *Id.* ¶3. In total, 8,176 Postcard Notices were mailed to potential Settlement Class Members. *Id.* Additionally, SCS emailed the link to the Long Notice and Claim Form to seven email addresses upon the request of a nominee.

## IV.    PLAN OF ALLOCATION

23.    Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Craig Decl., Ex. A (Long Notice) at 8-9. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

24.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

25.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## V.  THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

26.   The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims and consulted with a damages expert. The investigation consisted of an independent review of public documents and statements regarding and from CD Projekt and retention of an investigator who interviewed former CD Projekt employees and third parties. Through their investigation, as well as their review of Defendants' motion to dismiss, Lead Counsel determined the scope and strength of the claims Plaintiffs could bring on behalf of the putative class, and the corresponding misrepresentations and/or omissions. Through these efforts, Plaintiffs and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation.

27.   Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial.

28.   Although Lead Counsel believes Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat Defendants' motions to dismiss. While the motion to dismiss the Complaint had not yet been decided at the time of the Settlement, Defendants have asserted challenges to personal jurisdiction, *forum non conveniens*, falsity, and scienter.

29.   Plaintiffs faced the risk that the Court may have found that Defendants' statements were not actionably false or misleading. Plaintiffs also faced the risk that the Court would find they had not adequately pleaded falsity and/or a strong inference of scienter as required by the Private Securities Litigation Reform Act of 1995

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

("PSLRA"). The Court could also have found that there was no personal jurisdiction over the Defendants, or that this was the wrong forum, delaying the proceedings.

30.    Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency for publicly traded CD Projekt securities, which traded over-the-counter in the U.S. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing CD Projekt securities as it would be uneconomical for them to bring individual cases.

31.    Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiffs calculated that damages were $11 million, assuming they prevailed on all of their claims. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

32.    Discovery would also be costly, complex, and time consuming. Plaintiffs would likely need to review thousands of documents, many of which are likely in Polish, and take several depositions of Defendants, CD Projekt employees, and third parties, many of which would likely require translators. After the close of fact discovery, the Parties would engage in expert discovery on the questions of loss causation and damages. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud.

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)

33.     Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

9

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2023.

/s/*Laurence M. Rosen*

DECLARATION OF LAURENCE M. ROSEN; CV 20-11627 FMO (RAOx)