# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TRAMPE, individually, and on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CD PROJEKT S.A., et al., <br><br> Defendants. | Case No. CV 20-11627 FMO (RAOx) <br><br> **ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to the Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class (Dkt. 90, "Motion")[1] and Motion for Award of Attorneys' Fees and Expenses and Award to Plaintiffs (Dkt. 87, "Fees Motion") filed by lead plaintiff James W. Gordley ("plaintiff" or "Gordley") and additional plaintiffs Steven Shaginyan ("Shaginyan") and Phillip Trefethen ("Trefethen"), and the oral argument presented during the final fairness hearing held on June 1, 2023, the court concludes as follows.

## BACKGROUND

On December 24, 2020, Andrew Trampe filed this action on behalf of himself and all others similarly situated against CD Projekt S.A. ("CD Projekt"), Adam Michal Kicinski ("Kicinski"), Piotr Marcin Nielubowicz ("Nielubowicz"), and Michał Nowakowski ("Nowakowski"), asserting violations of the Securities Exchange Act of 1934 ("Exchange Act") and associated regulations. (See Dkt.

---

[1] The Motion is incorrectly captioned as a motion for attorney's fees. (See Dkt. 90, Motion).

1, Complaint at ¶¶ 7, 9-11 & 44-59). A related action was filed shortly thereafter. (See Dkt. 38, Court's Order of May 14, 2021, at 1). On May 14, 2021, the court consolidated the actions and appointed Gordley as lead plaintiff[2] and The Rosen Law Firm, P.A. as lead counsel. (See id. at 6-7).

On July 30, 2021, plaintiff filed the operative Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Laws (Dkt. 43-1, "Consolidated Complaint"), asserting two federal securities claims on behalf of a proposed class of persons who purchased or otherwise acquired publicly traded CD Projekt securities between January 16, 2020, and December 17, 2020: (1) § 10(b) of the Exchange Act, 15 U.S.C. §§ 78j et seq., and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against CD Projekt, Kicinski, Nielubowicz, Nowakowski, and Marcin Iwinski ("Iwinski") (collectively, "defendants"); and (2) § 20(a) of the Exchange Act, 15 U.S.C. §§ 78t et seq., against defendants Kicinski, Nielubowicz, Nowakowski, and Iwinski. (See Dkt. 43-1, Consolidated Complaint at ¶¶ 1, 10, 12-15, 92 & 101-16). The Consolidated Complaint alleges that defendants made materially false or misleading statements regarding CD Projekt's Cyberpunk 2077 ("Cyberpunk") video game. (See id. at ¶¶ 39-46). Plaintiff seeks damages, attorney's fees and costs, and "such other and further relief as this Court may deem just and proper."[3] (Id. at Prayer for Relief).

After pre-filing and post-filing investigation, motion practice, expert consultation, and arm's-length settlement negotiations, the parties reached a settlement in principle in November 2021. (See Dkt. 86, PAO at 2). The parties memorialized the terms of the settlement in January 2022, and filed an amended settlement agreement in April 2022, after a hearing on plaintiff's initial motion for preliminary approval. (See id.).

---

[2] The court refers only to Gordley as plaintiff throughout this Order because Shaginyan and Trefethen did not seek appointment as class representatives. (See Dkt. 86, Court's Order of January 3, 2023 ("Preliminary Approval Order" or "PAO") at 2 n. 1). At times, however, the court will refer to all three as plaintiffs.

[3] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

The parties have defined the settlement class as "all Persons . . . who acquired CD Projekt-related equity securities publicly traded in domestic transactions from January 16, 2020, through December 17, 2020, both dates inclusive, and who were damaged thereby."[4] (Dkt. 77, Stipulation of Settlement ("Settlement Agreement") at ¶ 1.34). Pursuant to the settlement, defendants will pay a non-reversionary gross settlement amount of $1,850,000, (see id. at ¶¶ 1.33, 7.4), which will be used to pay eligible class members, settlement administration costs, taxes, attorney's fees and costs, and incentive awards for Gordley, Shaginyan, and Trefethen. (See id. at ¶ 7.2.). The settlement provides that lead counsel may apply for attorney's fees and costs, (see id. at ¶ 8.1), and the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") explains that lead counsel "intend to ask the Court to award them fees of up to 30% of the Settlement Amount," and costs not to exceed $40,000. (Dkt. 86, PAO at 3). Also, the proposed claims administrator, Strategic Claims Services ("SCS"), shall be paid no more than $150,000 from the gross settlement amount. (See Dkt. 77, Settlement Agreement at ¶¶ 1.8, 3.3). The remainder of the net settlement amount will be paid on a pro rata basis to all participating class members based on each authorized claimant's "recognized loss." (See Dkt. 86, PAO at 3).

On January 3, 2023, the court granted preliminary approval of the settlement, appointed SCS as the settlement administrator, and directed SCS to provide notice to the class members. (See Dkt. 86, PAO at 23). Thereafter, SCS implemented the notice program approved by the court. (See Dkt. 87-7, Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.") at ¶¶ 2-9); (id., Exh. A, Postcard Notice); (id., Exh. B, Long Notice); (Dkt. 90-4, Supplemental Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Report on Requests for Exclusion and Objections ("Supp. Craig Decl.") at ¶¶ 3-6). As

---

[4] "Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time." (Dkt. 77, Settlement Agreement at ¶ 1.34).

of April 21, 2023, SCS had not received any objections or valid requests for exclusion.[5] (See Dkt. 87-7, Craig Decl. at ¶¶ 10-11); (Dkt. 90-4, Supp. Craig Decl. at ¶¶ 7-8).

Plaintiff now seeks (1) final approval of the settlement; (2) attorney's fees and costs; and (3) incentive payments for named plaintiffs. (See Dkt. 90, Motion at 2); (Dkt. 87, Fees Motion at 2).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23[6] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

---

[5] The deadline for class members to opt-out or file objections to the settlement was April 7, 2023. (See Dkt. 86, PAO at 23-24); (Dkt. 87-7, Craig Decl. at ¶¶ 10-11).

[6] All further "Rule" references are to the Federal Rules of Civil Procedure.

4

Approval of a class action settlement requires the court to conduct a two-step inquiry.[7] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseno v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply

---

[7] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, defendant complied with these requirements by sending the required CAFA notice to the applicable state attorneys general and the United States Attorney General. (See Dkt. 92, Declaration of Ryan E. Blair Regarding Compliance with Class Action Fairness Act, 28 U.S.C. § 1715 at ¶ 2). No objections were received. (See Dkt. 94, Supplemental Declaration of Ryan E. Blair Regarding Compliance with Class Action Fairness Act, 28 U.S.C. § 1715 at ¶ 3).

Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'") (citing Fed. R. Civ. P. 23(e)(2)(C)).  Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[8] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

## DISCUSSION

I.  FINAL APPROVAL OF CLASS SETTLEMENT.

    A.  Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (See Dkt. 86, PAO at 7-15, 23).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B.  Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

---

[8] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."  Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

Here, after undertaking the required examination, the court approved the form of the Class Notice and notification procedures. (See Dkt. 86, PAO at 20-23). As discussed above, the notice program was implemented by SCS. Based on the record and its prior findings, the court finds that the Class Notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B).

C. Whether the Class Settlement Is Fair, Adequate and Reasonable.[9]

1. **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. Here, the court previously addressed the adequacy of counsel and the arm's-length negotiation factors in connection with preliminary approval. (See Dkt. 86, PAO at 11, 15-16). With respect to the latter factor, the court found that the "parties thoroughly investigated and considered their own and the opposing parties' positions" and "had a sound basis for measuring the terms of the settlement[.]" (Id. at 16). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

---

[9] Prior to the 2018 amendment to Rule 23(e), courts applied the "Churchill" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the Churchill factors). Because "it is still appropriate for district courts to consider the[ Churchill] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in evaluating the Rule 23(e)(2) factors.

## 2. The Relief Provided to the Class is Adequate.

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### a. *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was fair and reasonable, "particularly when viewed in light of the litigation risks and the costs, risks, and delay of trial and appeal." (Dkt. 86, PAO at 17). The court recognized that the risks of continued litigation were significant. (Id. at 18). Under the circumstances, it is significant that class members will receive a monetary recovery "by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted); see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

### b. *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, class members who submit a claim form, which is available on a case-specific website, will receive a distribution from the settlement fund. (See Dkt. 90-2, Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class ("Memo")) at 17). Under the circumstances, the court is persuaded that the method of distribution is fair and is intended "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions § 13:53, at 557 (6th ed. 2022). Thus, this factor weighs in favor of approval.

c.   *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-a-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). The court must assess the proposed award of attorney's fees by considering the Bluetooth factors. See McKinney-Drobnis, 16 F.4th at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original).

Here, application of the Bluetooth factors to the requested attorney's fees award does not undermine the fairness of the settlement. First, the Settlement Agreement does not include a specific amount allocated to attorney's fees, (see, generally, Dkt. 77, Settlement Agreement at ¶ 8), and class counsel seek an award of attorney's fees of 25% of the settlement amount.[10] (See Dkt. 89-1, Fee Memo at 1). Thus, counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that a sign of collusion included "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted). Second, the Settlement Agreement does not include a clear sailing provision. (See, generally, Dkt. 77,

---

[10]  Although the class notice advised class members that class counsel would seek an award of 30% of the settlement funds, (see Dkt. 87-7, Exhs. A & B), counsel now seek only 25%. (See Dkt. 89-1, Corrected Memorandum of Points and Authorities in Support of Motion for Award of Attorneys' Fees and Expenses and Award to Plaintiffs ("Fee Memo") at 1).

Settlement Agreement). Third, there is no reverter provision. (Id.); (Dkt. 77, Settlement Agreement at ¶¶ 7.4, 7.10) (noting that "no portion of the Settlement Fund will be returned to Defendants").

          d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[11] Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the parties entered into a supplemental agreement providing that CD Projekt had the right to terminate the settlement if class members holding more than a certain number of shares opted out. (See Dkt. 77, Settlement Agreement at ¶ 10.3). "The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair." Hefler v. Wells Fargo & Co., 2018 WL 4207245, *11 (N.D. Cal. 2018). Moreover, "[t]here are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts." Thomas v. MagnaChip Semiconductor Corp., 2017 WL 4750628, *5 (N.D. Cal. 2017).

        3.    **Equitable Treatment of Class Members**.

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg on Class Actions § 13:48, at 518 (6th ed. 2022).

Here, the settlement does not favor any particular group of class members. (See, generally, Dkt. 77, Settlement Agreement). The net settlement amount will be shared pro rata among all class members who filed valid claims pursuant to a "recognized loss[]" formula developed by lead plaintiff's damages expert. (See Dkt. 90-2, Memo at 18-19); (Dkt. 87-7, Exh. B, Long Notice at 5-9); (Dkt. 86, PAO at 3); see, e.g., In re Extreme Networks, Inc. Sec. Litig.,

---

[11] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

2019 WL 3290770, *3 (N.D. Cal. 2019) ("The Net Settlement Fund will be distributed among claimants on a pro rata basis based on 'Recognized Loss' formulas tied to claimants' potential damages and developed by [plaintiff]'s expert."). Accordingly, this factor also weighs in favor of final approval.

4. **The Reaction of Class Members to the Proposed Settlement**.

The reaction of the class members to the proposed settlement has been very positive. Significantly, there were no objections or valid requests for exclusion. (See Dkt. 87-7, Craig Decl. at ¶¶ 10-11); (Dkt. 90-4, Supp. Craig Decl. at ¶¶ 7-8). The lack of objections and valid requests for exclusion further support approval of the settlement. See, e.g., Destefano v. Zynga, Inc., 2016 WL 537946, *14 (N.D. Cal. 2016) ("[A] low number of exclusions representing a small fraction of shares in the public float also supports the reasonableness of a securities class action settlement."); Bostick v. Herbalife Int'l of Am., Inc., 2015 WL 12731932, *26 (C.D. Cal. 2015) (approving settlement with 687 exclusion requests out of proposed class of 1.5 million individuals and noting that "[c]ourts generally consider a low number of requests for exclusion . . . to weigh strongly in favor of settlement approval"); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received). In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II. ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS.

A. Attorney's Fees.

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces a common fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570. The lodestar method is

11

typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement.  See Bluetooth, 654 F.3d at 941.  The percentage-of-recovery method is typically used when a common fund is created.  See id. at 942.  "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable."  In re Apple Inc. Device Performance Litig., 50 F.4th 769, 784 (9th Cir. 2022).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate.  See In re Hyundai, 926 F.3d at 570.  Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted).  However, "adjustments [to the lodestar calculation] are the exception rather than the rule."  Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark."  In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted).  The 25% benchmark "can be adjusted upward or downward, depending on the circumstances."  Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including:  (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee; and (5) awards in similar cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002);

Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Here, the court will utilize the percentage of fund method, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). Under the circumstances, the court finds that the requested attorney's fees amount ($462,500), (Dkt. 89-1, Fee Memo at 1), which equates to 25% of the common fund, constitutes a reasonable fee. See In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award).

B.  Costs.

Class counsel seek $26,267.41 in costs. (See Dkt. 89-1, Fee Memo at 22). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $26,267.41 in costs.

C.  Class Representative Service Award.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.").

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service awards at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 86, PAO at 19-20); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $5,000 for Gordley was

reasonable. (See Dkt. 86, PAO at 20). Moreover, having reviewed plaintiff's Fee Motion, the court finds that Shaginyan and Trefethen should also each be awarded an incentive award of $5,000. (See Dkt. 89-1, Fee Memo at 19-22).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class **(Document No. 90)** is **granted** upon the terms and conditions set forth in this Order.

2. Plaintiff's Motion for Award of Attorneys' Fees and Expenses and Award to Plaintiffs **(Document No. 87)** is **granted** as set forth in this Order.

3. The court hereby **grants** final approval of the parties' Settlement Agreement **(Document No. 77)**. The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 1.34 of Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6. Lead plaintiff James W. Gordley, and plaintiffs Steven Shaginyan and Phillip Trefethen shall each be paid a service payment of $5,000.00 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $462,500.00 in attorney's fees, and $26,267.41 in costs in accordance with the terms of the Settlement Agreement and this Order.

8. The Claims Administrator, SCS, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9.  All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 22nd day of November, 2023.

/s/
Fernando M. Olguin
United States District Judge